IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEE W. STRUCK , et al., | : | Case No. 2:11-CV-00982 |
| | : | |
| Plaintiffs, | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| v. | : | Magistrate Judge Norah M. King |
| | : | |
| PNC BANK N.A., | : | |
| Defendant. | : | |
| | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiffs' Motion for Conditional Certification and Court-Supervised Notice pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b).  (Doc. 52.)  For the reasons set forth herein, Plaintiff's Motion is **GRANTED** in part.

## I. BACKGROUND

On November 3, 2011, Plaintiffs Lee Struck ("Struck") and Christopher Kusserow ("Kusserow") (collectively "Plaintiffs") brought this action for unpaid overtime and related relief under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 216(b), on behalf of themselves and a putative class of current and former Mortgage Loan Officers ("MLOs") employed by Defendant PNC Bank, N.A. ("PNC" or "Defendant").[1]  (Doc. 2.)   MLOs are those employees charged with the sale, origination and production of home loans to the general public at Defendant's branches.  The named plaintiffs are joined in this action by forty-five (45) additional current and former PNC

---

[1] Plaintiffs' complaint asserts claims under the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111.01, *et seq*., and the Ohio Prompt Pay Act, OR.R.C. § 4113.15, on behalf of a class of Defendant's Ohio MLOs pursuant to Fed. R. Civ. P. 23.  These state law claims and the propriety class certification under Rule 23 are not at issue in the instant motion.

MLOs who filed consent forms to join as plaintiffs in this suit.  These opt-in Plaintiffs include individuals who work or worked in Defendant's offices and bank branches in Ohio, California, Connecticut, Delaware, Florida, Illinois, Kentucky, Michigan, Missouri, New Hersey, New York, Pennsylvania, Texas, Virginia, and Washington.  (Lucas Decl., Doc. 52, Att. 1.)

Until the spring of 2011, PNC classified its MLOs as exempt from the requirements of the FLSA and did not compensate them with overtime pay when they worked more than forty (40) hours in a work week. During this period, PNC MLOs were compensated through some combination of commissions and a salary draw.  On April 1, 2011, PNC reclassified MLOs as a group to be non-exempt, overtime-eligible employees. Plaintiffs characterize Defendant's previous exempt designation of MLOs as an unlawful misclassification, and allege that PNC's failure to pay overtime violated the FLSA. Defendant denies any wrongdoing and asserts that it reclassified its MLOs, not because they were previously misclassified, but in response to regulatory developments in the loan origination industry – including the adoption of the Dodd-Frank Loan Officer Compensation Rules.  *See* 12 C.F.R. § 226 (effective April 1, 2011).

Plaintiffs now move that this Court conditionally certify and supervise notice to a putative class of current and former MLOs employed at any of PNC's locations across the country during any workweek from November 3, 2008.  Defendant currently employs approximately 1,100 MLOs nationally.  (PNC Bank Decl., Doc. 54, Ex. B, ¶ 4.) Plaintiffs assert that conditional certification is warranted here because PNC MLOs preform the same job duties throughout the country and are subject to the same PNC operating policies and procedures at all of Defendant's branches.

In support of their Motion, Plaintiffs submit fifteen declarations from opt-in plaintiffs who state that they regularly worked over 40 hours per week to meet PNC's production goals in order to avoid repercussions including but not limited to termination, and did not receive overtime compensation. (Doc. 52, Exs. B-P.) Plaintiffs' declarants also state that they were subject to and expected to comply with national PNC policies and procedures for, among other things, loan origination, loan locks, loan pricing, commissions, and documentation needed for loan processing. Accordingly, declarants describe participating in various national and regional conferences, trainings, meetings, and rallies with PNC MLOs from other offices, branches, and states. (*Id*.)

Defendant opposes conditional certification of a nationwide class of MLOs. PNC characterizes its MLOs as a highly heterogeneous group vested with substantial discretion as to when, where, and how to perform their job duties. PNC's lack of centralized policies in these matters, Defendant contends, results in a workforce whose employment experiences and compensation vary widely from person to person. PNC offers as support declarations from MLOs who describe their jobs as independent and entrepreneurial, and akin to running ones' own business. (Doc. 54, Exs. D-T.) Defendant's supporting declarations highlight MLO activities that have the potential to satisfy a range of different FLSA exemptions, including the administrative exemption, the outside sales exemption, the executive exemption, the highly compensated employee exemption, the combination exemption, and the retail sales exemption.

## II. LEGAL FRAMEWORK

Section 216(b) of the Fair Labor Standards Act "authorizes employees to bring an action for violations of its provisions on behalf of 'themselves and other employees

3

similarly situated.'" *In re HCR ManorCare, Inc.,* No. 11–3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011) (quoting 29 U.S.C. § 216(b)).[2] The Act establishes two requirements for a representative FLSA action against an employer: "1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Snelling v. ATC Healthcare Services, Inc.*, No. 2:11-cv-983, 2012 WL 6042839, at *2 (S.D. Ohio Dec. 4, 2012) (quoting *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006)). Notably, "the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in." *Heibel v. U.S. Bank Nat'l Association*, No. 2:11-cv-593, 2012 WL 4463771, at *7 (S.D. Ohio Sept. 27, 2012) (quoting *Lewis v. Huntington Nat. Bank*, 789 F.Supp.2d 863, 867 (S.D. Ohio 2011)).[3]

The distinct "opt-in" structure of § 216(b) heightens the need for employees to "reciev[e] accurate and timely notice concerning the pendency of the collective action." *Hoffman–La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989). The statute therefore vests district courts with "discretion to implement 29 U.S.C. § 216(b) … by facilitating notice to potential plaintiffs." *Id.* at 169. The decision to conditionally certify a class, and

---

[2] Section 216(b) states in relevant part:

> An action to recover the liability [for unpaid minimum wages or overtime compensation]... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

[3] Under 29 U.S.C. § 255(a), "[a] § 216(b) action may be commenced within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation." *Lewis*, 789 F.Supp.2d at 867 n.7 (quoting *Musarra v. Digital Dish, Inc*., No. 2:05-cv-545, 2008 WL 818692 (S.D. Ohio Mar. 24, 2008)).

thereby facilitate notice, is thus "within the discretion of the trial court." *Snelling*, 2012 WL 6042839 at *2 (citing *Hoffman–La Roche,* 493 U.S. at 169).

Accordingly, the Sixth Circuit has "implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Heibel*, 2012 WL 4463771, at *2 (citing *In re HCR ManorCare,* 2011 WL 7461073 at *1; *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011)). First, at the "initial notice" stage, before discovery has occurred, the Court "determine[s] whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Id.* (quoting *Swigart*, 276 F.R.D. at 213); *see also Lewis*, 789 F.Supp.2d at 867 (quoting *Comer,* 454 F.3d at 547). The second stage of the FLSA collective action analysis occurs once discovery is complete, when "the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims." *Heibel*, 2012 WL 4463771 at *2 (quoting *Swigart*, 276 F.R.D. at 213).

The FLSA does not explicitly define the term "similarly situated," and neither has the Sixth Circuit. *Wade v. Werner Trucking Co*., 2012 WL 5373311, at *4 (S.D. Ohio Oct. 31, 2012) (citing *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 584 (6th Cir. 2009)). Although the Sixth Circuit has declined to "create comprehensive criteria for informing the similarly situated analysis," it has held that FLSA plaintiffs may proceed collectively in cases where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien,* 575 F.3d at 585. "Thus, similarly situated class members under [the] FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs." *Lewis*, 789 F.Supp.2d at 868. This Court has emphasized

that a named plaintiff "need only show that [his] position [is] similar, not identical, to the positions held by the putative class members." *Heibel*, 2012 WL 4463771 at *3 (quoting *Lewis*, 789 F.Supp.2d at 867-68) (alterations in original).

Significantly, the Sixth Circuit has admonished that courts "should *not* apply a Rule-23 type analysis as to whether individualized questions will predominate." *Wade*, 2012 WL 5373311 at *4 (emphasis added) (citing *O'Brien*, 575 F.3d at 584-85) (explaining that the FLSA did not "import[] the more stringent criteria for class certification under Fed. R. Civ. P. 23"). The "similarly situated" standard is also "less stringent than Rule 20(a)['s] requirement that claims 'arise out of the same action or occurrence' for joinder to be proper." *O'Brien*, 575 F.3d at 584 (citing *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996)).

### III. LAW AND ANALYSIS

*A. Conditional Certification*

1. Standard

Given the minimal evidence before the court at the initial notice stage, *Swigart*, 276 F.R.D. at 213, plaintiffs need make only "a modest showing that they are similarly situated to the proposed class of employees" in order to obtain conditional certification. *Lewis*, 789 F.Supp.2d at 867. This "fairly lenient standard … typically results in conditional certification." *Id*. at 868.

In assessing whether Plaintiffs have met their initial burden to establish a "factual basis for the allegation of class-wide FLSA violations," *id.*, courts "consider whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and

6

whether as a matter of sound class management, a manageable class exists." *Heibel*, 2012 WL 4463771 at *3 (internal quotations omitted in original) (quoting *Lewis*, 789 F.Supp.2d at 868). Notably, "the Court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility" at this early stage in the proceedings. *Id.* at *2 (citing *Swigart*, 276 F.R.D. at 214 ("At the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues."); *Lacy v. Reddy Elec. Co.,* No. 3:11–cv–52, 2011 WL 6149842, at *2 (S.D. Ohio Dec. 9, 2011) ("Requiring any more factual support from Plaintiff at this early stage, or weighing competing factual assertions, would intrude improperly into the merits of the action, essentially imposing a burden upon Plaintiff to prove the factual predicates of his claim as a precondition to obtaining preliminary conditional certification.") (internal citations omitted)).

## 2. Analysis

Here, Plaintiffs have met their initial burden to show that that a class of similarly situated employees exists. They have presented affidavits from 15 MLOs from across the country attesting to common job responsibilities, common training, and common policies. The Court notes too that, "at this preliminary stage, the fact that Defendants chose to reclassify MLOs as a group implies that its MLOs as a whole, perform similar duties." *Heibel*, 2012 WL 4463771, at *5. Yet more importantly, Plaintiffs have asserted "common theories of defendants' statutory violations," *O'Brien,* 575 F.3d at 585, namely that Defendant's prior classification of MLOs as exempt from FLSA protections was improper, that MLOs regularly worked in excess of 40 hours a week without overtime

7

compensation to meet PNC production goals, and that these employees are therefore owed backpay.  *See Swigart*, 276 F.R.D. at 213 (granting MLOs conditional § 216(b) class certification where they submitted evidence showing MLOs had similar job responsibilities, did not receive overtime pay when they worked more than forty hours per week, and then were reclassified from exempt to non-exempt employees as a group); *Heibel*, 2012 WL 4463771 at *5-6 (same); *Lewis*, 789 F.Supp.2d at 868 (same); *Wolfram v. PHH Corp*., No. 1:12-cv-599, 2012 WL 6676778, at *2 (S.D. Ohio, Dec. 21, 2012) (same).

  Defendant objects to the conditional certification of its MLOs on the grounds that Plaintiffs have failed to "prove that they and the putative class were victims of a common *unlawful* policy or plan." (Doc. 58 at 12) (emphasis in original).  The Court acknowledges that PNC's decision to reclassify its MLOs is not an admission of any previous misclassification and may have "limited, if any, probative value as to the ultimate merits of Plaintiffs' claims." *Heibel*, 2012 WL 4463771, at *5. Nevertheless, the standard which PNC invokes is inapposite at this stage in the analysis.  As discussed above, the relevant inquiry at this juncture is whether Plaintiffs' claims are united by common *theories* of defendant's statutory violations, *O'Brien,* 575 F.3d at 585 – a standard which Plaintiffs here have met.  The Court does not evaluate the merits of that argument at this pre-discovery stage in the proceedings. *Heibel*, 2012 WL 4463771, at *2; *Swigart*, 276 F.R.D. at 214; *Lacy,* 2011 WL 6149842, at *2.

  Defendant further argues that collective treatment in this case is improper because MLOs' job duties and experiences vary, such that different FLSA exemptions may be applicable to different employees.  To that end, Defendant urges this court to consider its

8

submission of numerous affidavits from MLOs describing the discretion vested in them to decide how, when and where to perform their jobs and their exercise of varying degrees of independent judgment. Defendant also attacks the credibility of the named Plaintiffs, whom they cast as serial litigators. Again, the court does not "consider the merits of the claims, resolve factual disputes, or evaluate credibility" at this stage of the proceedings. *Heibel*, 2012 WL 4463771 at *2. *See also Swigart*, 276 F.R.D. at 214; *Lacy,* 2011 WL 6149842 at *2. That includes "merit and factual disputes regarding what exemptions may apply." *Heibel*, 2012 WL 4463771 at *5 ("The Court finds that any detailed inquiry into what exemptions or other individualized considerations may apply, or whether such consideration[s] will ultimately make the class unmanageable, is premature at this initial state prior to discovery."). *See also Creely v. HCR Manorcare, Inc.*, 789 F.Supp.2d 819, 839 (N.D. Ohio 2011) ("[T]his Court is not swayed by [the defendant's] submission of thirty-five 'happy camper' affidavits …. [T]he Court's function at this stage of conditional certification is not to perform a detailed review of individualized facts from employees hand-picked by [the defendant]. Those questions of the breadth and manageability of the class are left until the second stage analysis….") (internal citations omitted).

      Moreover, Defendant misconstrues the FLSA's "similarly situated" standard: courts in the Sixth Circuit have been explicitly warned against *"*apply[ing] a Rule-23 type analysis as to whether individualized questions will predominate." *O'Brien*, 575 F.3d at 584-85. Rather, FLSA Plaintiffs seeking conditional certification to proceed collectively "need only show that [their] position[s] [are] similar, not identical, to the positions held by the putative class members." *Heibel*, 2012 WL 4463771 at *3 (quoting

*Lewis*, 789 F.Supp.2d at 867-68) (alterations in original). Where Plaintiffs' claims are sufficiently "unified by common theories of defendants' statutory violations," a putative class can satisfy the Act's collective action standard "even if the proofs of these theories are inevitably individualized and distinct." *O'Brien,* 575 F.3d at 585.

If indeed discovery shows the claims of PNC MLOs to be so individualized as to render the class unmanageable, Defendant may move to decertify the class at the second stage of the certification proceedings. *Heibel*, 2012 WL 4463771 at *6. As this Court has explained previously:

> Conditional certification is meant only to aid in identifying similarly situated employees. It is not a final determination that the case may proceed as a collective action. After the opt-in forms have been filed and discovery is complete, a defendant may file a motion for decertification. At that point, the court examines with much stricter scrutiny the question of whether these other employees are, in fact, similarly situated.

*Heibel*, 2012 WL 4463771 at *6 (quoting *Lacy,* 2011 WL 6149842, at *2).

Finally, Defendant argues that this Court should deny conditional certification due to what Defendant characterizes as "improper" pre-certification solicitation of prospective class members. Defendant points to a website constructed by Plaintiffs' counsel "advertising this case and inviting people to join," and which links to a "pre-populated" consent form that enables putative class members to opt into the suit "with the click of a button." (Doc. 58 at 33.) PNC argues that Plaintiffs' private notice process renders judicially supervised conditional certification and notice unnecessary. The Court finds this argument unpersuasive.

This Court has previously "found that pre-certification communications with putative members of a [§ 216(b)] collective action should be allowed unless communication contradicts a court notice, is misleading or improper." *Heibel*, 2012 WL

10

4463771, at *6 (quoting *Goody v. Jefferson Cnty.*, No. CV09437, 2010 WL 3834025, at *2 (D. Idaho Sept. 23, 2010) (collecting cases)).  As discussed above, "the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in." *Id.* at *7 (quoting *Lewis*, 789 F.Supp.2d at 867).  Thus, the very structure imposed by 29 U.S.C. § 216(b) "appears to encourage early communication with potential classmembers."  *Id*. (citing *Lewis*, 789 F.Supp.2d at 867; *Bollinger v. Residential Capital, LLC*, 761 F.Supp.2d 1114, 1122 (W.D. Wash. 2011) ("[A]n individual claimant under § 216(b) is not deemed to have initiated suit until his consent is filed, provided incentive for putative class members to file their consent forms early.")).  *See also Hoffman–La Roche,* 493 U.S. at 170 (explaining that the benefits of collective action under § 216(b) are "depend[ent] on employees receiving accurate and timely notice").

      Here, as Defendant itself points out, PNC currently employs approximately 1,100 MLOs. The class of current and former MLOs with potential claims is therefore likely much larger.  That Plaintiffs' were able to successfully contact some 45 opt-in plaintiffs without the Court's aid does not negate the need to facilitate notice to other class members on whom the statute of limitations is still running.  Accordingly, "[u]nder the circumstances of this case, counsels' pre-certification communications with potential class members do not form an appropriate basis for ... denying class certification." *Heibel*, 2012 WL 4463771, at *7, *6 (declining to deny conditional certification of MLOs or strike opt-in notices where potential plaintiffs were solicited through letters to Defendant's employees and a "website providing information about the suit as well as opt-in consent forms").

11

In light of the foregoing, the Court finds that Plaintiffs have met their initial burden of demonstrating that they are similarly situated to the proposed class.  Plaintiffs' request for conditional class certification is therefore **GRANTED**.

*B. Court-Supervised Notice*

Having conditionally certified Plaintiff's proposed class, "the Court has the authority to supervise notice to potential plaintiffs."  *Lewis*, 789 F.Supp.2d 863 (citing *Hoffman-La Roche*, 493 U.S. at 172 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely accurate, and informative.")).  Accordingly, the Court **GRANTS** Plaintiffs' request to authorize notice to putative opt-in plaintiffs.

Plaintiffs attach to their Motion a proposed notice to which Defendant objects on a variety of grounds.  The Court will not resolve the proper form and content of notice at this time.  Rather, the Court **ORDERS** the parties to confer and submit for the Court's approval, within **fourteen (14) days** of the issuance of this Order, a joint proposed notice or, if the parties are unable to agree, separate proposed notices.

As part of their plan for distributing notice to potential class members, Plaintiffs request that the Court authorize Plaintiffs' counsel to disseminate notice to former employees via email.  Defendant objects to such methods of supplementary notice as an unwarranted invasion of its former employees' privacy.  In evaluating such a request, the Court "must balance two competing interests: safeguarding the privacy of individuals not currently a party to this case and ensuring that all potential plaintiffs receive notice of their right to join this lawsuit. Inherent in this balance is the principle that individuals' private information, which they entrusted in their employer, shall not be disclosed except for cause." *Order*, *Lewis v. Huntington Nat'l Bank*, No. 2:11-cv-58, Doc. 53 at 3.  When

weighing these considerations in the context of proposed email notice to former employees, this Court has reasoned that "[t]he addresses on file [with the Defendant] for these individuals may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least copy of the Notice Package." *Id*. at 4. Moreover, where notice is attached to an email "as a pdf file rather than typed into the body of the email, the risk that the Notice will be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court" is mitigated. *Id*. (internal citations and quotations omitted). The same logic applies here.  The Court therefore **GRANTS** Plaintiffs' request to distribute notice to former employees via email.

The Court **ORDERS** that, within **fourteen (14) days** of the date of this Order, Defendants shall gather and provide Plaintiffs with the full name and last known home address of each employee and former employee fitting the class description, as well as the last known personal email address of each former employee fitting the class description. The Court further **ORDERS** the parties to confer and submit for the Court's approval, within **fourteen (14) days** of the date of this Order, a joint plan for the distribution of notice or, if unable to agree, separate proposed distribution plans consistent this Order.

The Court fully expects the parties to work toward extrajudicial resolution with regard to a proposed notice and a proposed distribution plan.  In the event that the parties are unable to reach agreement, however, any briefing submitted by either party on these issues shall not exceed ten (10) pages in total. No responsive briefing will be permitted on these matters unless explicitly directed by the Court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification and Court-Supervised Notice is **GRANTED** in part.  The Court **ORDERS** that, within **fourteen (14) days** of the date of this Order, Defendants shall provide Plaintiffs with the full name and last known home address of each employee and former employee fitting the class description, as well as the last known personal email address of each former employee fitting the class description. The Court further **ORDERS** the parties to confer and submit within **fourteen (14) days** a joint proposed notice and joint distribution plan consistent with this Order or, if the parties are unable to agree, separate proposed notices and/or distribution plans for the Court's approval.

**IT IS SO ORDERED.**

s/ Algenon L. Marbley  
**Algenon L. Marbley**  
**United States District Court Judge**

**DATED:  February 13, 2013**