IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LEE W. STRUCK, CHRISTOPHER B. KUSSEROW, ALINA MARRERO, SARAH ELIZABETH GOODMAN, JOHN SKIDMORE, APRIL HOWELL, DARRYL SUTTON, LINDA ALTIERI, JAMI MCDERMOTT, THOMAS CAPALDI, VINCENT AIOSSA, BRIAN MAHRER, and TERRY WIYRICK, on behalf of themselves and others similarly situated, | **Case No. 2:11-CV-00982** <br><br> **JUDGE ALGENON L. MARBLEY** <br><br> **Magistrate Judge Norah M. King** |
| Plaintiffs, | |
| v. | |
| PNC BANK, N. A., | |
| Defendant. | |

## AMENDED NATIONWIDE COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FLSA AND STATE WAGE AND HOUR LAWS

Lee W. Struck, Christopher B. Kusserow, Alina Marrero, Sarah Elizabeth Goodman, John Skidmore, April Howell, Darryl Sutton, Linda Altieri, Jami McDermott, Thomas Capaldi, Vincent Aiossa, Brian Mahrer, and Terry Wiyrick ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this lawsuit against PNC Bank, N.A. ("Defendant"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*  In addition to their nationwide FLSA claims, certain Plaintiffs also seek relief on behalf of themselves and all others similarly situated employees under the state laws of Ohio (the Ohio Minimum Fair Wage Standards Act ("OWA"), O.R.C. §§ 4111.01, 4111.03, 4111.10, and the Ohio Prompt Pay Act ("OPPA"), O.R.C. §§ 4113.15), Illinois (the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §105/1 *et seq.*, 56 ll. Admin. Code § 210.100 *et seq.*), Indiana (the Indiana

Wage Payment Statute ("IWPS"), I.C. §§ 22-2-5-1, *et seq.*), California (Cal. Wage Order No. 4; Cal. Labor Code §§ 201, 202, 203, 226, 510, 512 and 1194; and Cal. Bus. & Prof. Code §§ 17200 *et seq.*), Kentucky (the Kentucky Overtime Law ("KOL"), KRS § 337.010 *et seq.*), Maryland (the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Employment Article, § 3-401, *et seq.*), Massachusetts (the Massachusetts Wage Act ("MWA"), Mass. Gen. Laws ch. 151, §§ 1A and 1B), Missouri (the Missouri Minimum Wage Law ("MMWL"), R.S.Mo. § 290.500 *et seq.*), New Jersey (the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. §§ 34:11-56a, *et seq.*), New York (the New York Labor Law ("NYLL") and associated regulations), Pennsylvania (Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.101, *et seq.*), and Washington (the Washington Minimum Wage Act ("WMWA"), Rev. Code Wash. §§ 49.12.005, 49.28.010, 49.46.010, & 49.52.070 *et seq.*).[1] Plaintiffs' FLSA claims are asserted as a collective action pursuant to 29 U.S.C. § 216(b), while the State Law Claims are asserted on a class wide basis pursuant to Federal Rule of Civil Procedure 23.  The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1.　　This Court has federal question jurisdiction over this action pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b) and 28 U.S.C. §§1331.

2.　　This Court also has original jurisdiction over the State Law Claims in this action under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), because this is a class action in which: (1) there are 100 or more members in Plaintiffs' proposed classes; (2) at least some members of the proposed classes have different citizenship from Defendant; and (3) the claims of

---

[1] The state law claims shall be referred to collectively as the "State Law Claims."

the proposed class members exceed $5,000,000 in the aggregate. In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' State Law Claims because those claims derive from a common nucleus of operative fact.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (d) because Defendant resides in this district and because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

4.      Plaintiff Lee W. Struck is a former employee of Defendant as defined by 29 U.S.C. § 203(e). Plaintiff Struck, who was employed by Defendant as a "Retail Mortgage Loan Officer" ("MLO"), worked over 40 hours per week and was not paid overtime.  Plaintiff Struck resides in Powell, Ohio.  Plaintiff Struck has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

5.      Plaintiff Christopher B. Kusserow is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Kusserow, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Kusserow resides in Plain City, Ohio. Plaintiff Kusserow has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

6.      Plaintiff Alina Marrero is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Marrero, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Marrero resides in Chicago, Illinois. Plaintiff Marrero has evidenced her consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

7.     Plaintiff Sarah Elizabeth Goodman is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Goodman, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Goodman resides in Indianapolis, Indiana. Plaintiff Goodman consents to bring this lawsuit pursuant to 29 U.S.C. §216(b).

8.     Plaintiff John Skidmore is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Skidmore, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Skidmore resides in Santa Barbara, California. Plaintiff Skidmore has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

9.     Plaintiff April Howell is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Howell, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Howell resides in Louisville, Kentucky. Plaintiff has evidenced her consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

10.     Plaintiff Darryl Sutton is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Sutton, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Sutton resides in Annapolis, Maryland. Plaintiff Sutton has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

11.     Plaintiff Linda Altieri is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Altieri, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Altieri resides in South Yarmouth, Massachusetts.

4

Plaintiff Altieri has evidenced her consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

12.     Plaintiff Jami McDermott is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff McDermott, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff McDermott resides in Saint Charles, Missouri. Plaintiff McDermott has evidenced her consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

13.     Plaintiff Thomas Capaldi is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Capaldi, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Capaldi resides in Wenonah, New Jersey. Plaintiff Capaldi has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

14.     Plaintiff Vincent Aiossa is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Aiossa, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Aiossa resides in North Babylon, New York. Plaintiff Aiossa has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

15.     Plaintiff Brian Mahrer is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Mahrer, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Mahrer resides in Lancaster, Pennsylvania. Plaintiff Mahrer has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

16.     Plaintiff Terry Wiyrick is a former employee of Defendant, as defined by 29 U.S.C. § 203(e).  Plaintiff Wiyrick, who was employed by Defendant as an MLO, worked over 40 hours per week and was not paid overtime.  Plaintiff Wiyrick resides in Colbert, Washington. Plaintiff Wiyrick has evidenced his consent to bring this lawsuit by filing the attached Notice of Consent pursuant to 29 U.S.C. §216(b).  *See*, Exhibit A.

17.     Defendant, PNC Bank, N.A., is the principal subsidiary of the PNC Financial Services Group, Inc., based in Pittsburgh, Pennsylvania, and doing business nationwide.

18.     Defendant PNC Bank, N.A. does business in the state of Ohio and can be served at One PNC Plaza, 249 Fifth Avenue, Pittsburgh, Pennsylvania.

19.     In 2008, parent company PNC Financial Services Group, Inc. announced that it would acquire Cleveland-based National City Bank for approximately $5.2 billion in PNC stock. The shareholders approved the acquisition of National City Bank on or about December 31, 2008.

20.     Defendant PNC Bank N.A. is now the sixth largest commercial bank in the United States with $264.3 billion in assets, $183.4 billion in deposits, and 2,761 branches in 2010, including branches in the State of Ohio.

<u>**SUMMARY**</u>

21.     Plaintiffs were employees of Defendant and bring this action on behalf of themselves and other current and former employees of Defendant similarly situated for unpaid wages, overtime compensation, improper deductions, and other relief under the FLSA, as amended, 29 U.S.C. § 201, *et seq*.

22.     Plaintiffs are former MLOs who were misclassified by Defendant as exempt from the overtime provisions of the FLSA and/or applicable state wage and hour laws of Ohio, Illinois,

Indiana, California, Kentucky, Maryland, Massachusetts, Missouri, New Jersey, New York, Pennsylvania, and Washington  (the "State Laws"), as described below.

23.     Plaintiffs bring this action on behalf of themselves and all persons who were, are, or will be employed by Defendant nationwide as an MLO (hereinafter "Nationwide FLSA Collective Plaintiffs"), at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Nationwide FLSA Period"), and who were, are, or will be misclassified by Defendant as exempt from overtime pay under federal law and who had improper deductions taken from their pay.

24.     Certain Plaintiffs also bring this action on behalf of the following subclasses:

a.     <u>The Ohio Subclass</u>: all persons who were, are, or will be employed by Defendant in the State of Ohio as an MLO, at any time within the three (3) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Ohio Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law, and who had improper deductions taken from their pay.

b.     <u>The Illinois Subclass</u>: all persons who were, are, or will be employed by Defendant in the State of Illinois as an MLO, at any time within the three (3) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Illinois Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

c.     <u>The Indiana Subclass</u>: all persons who were, are, or will be employed by Defendant in the State of Indiana as an MLO, at any time within the two (2) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Indiana Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

d.   The California Subclass: all persons who were, are, or will be employed by Defendant in the State of California as an MLO, at any time within the four (4) years prior to the date of the filing of the Complaint through April 4, 2011 (the "California Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

e.   The Kentucky Subclass: all persons who were, are, or will be employed by Defendant in the Commonwealth of Kentucky as an MLO, at any time within the five (5) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Kentucky Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

f.   The Maryland Subclass: all persons who were, are, or will be employed by Defendant in the State of Maryland as an MLO, at any time within the three (3) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Maryland Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

g.   The Massachusetts Subclass: all persons who were, are, or will be employed by Defendant in the Commonwealth of Massachusetts as an MLO, at any time within the two (2) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Massachusetts Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

h.   The Missouri Subclass: all persons who were, are, or will be employed by Defendant in the State of Missouri as an MLO, at any time within the two (2) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Missouri Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

i.   The New Jersey Subclass: all persons who were, are, or will be employed by Defendant in the State of New Jersey as an MLO, at any time within the two (2) years prior to the date of the filing of the Complaint through April 4, 2011 (the "New Jersey Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

j.   The New York Subclass: all persons who were, are, or will be employed by Defendant in the State of New York as an MLO, at any time within the six (6) years prior to the date of the filing of the Complaint through April 4, 2011 (the "New York Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

k.   The Pennsylvania Subclass: all persons who were, are, or will be employed by Defendant in the Commonwealth of Pennsylvania as an MLO, at any time within the three (3) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Pennsylvania Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

l.   The Washington Subclass: all persons who were, are, or will be employed by Defendant in the State of Washington as an MLO, at any time within the three (3) years prior to the date of the filing of the Complaint through April 4, 2011 (the "Washington Subclass Period"), who were, are, or will be improperly misclassified as exempt from overtime pay under applicable law.

25.   The primary job of Plaintiffs, the Nationwide FLSA Collective Plaintiffs, and the State Law Subclasses, is selling, originating, and producing home loans to the general public in Defendant's branches, following established policies and procedures created by Defendant.

Defendant uses the same operating policies and procedures for its MLOs in all of its branches throughout the United States.

26.     Defendant unlawfully classified Plaintiffs, the Nationwide FLSA Collective Plaintiffs, and the members of the State Law Subclasses as exempt from overtime payments under federal and state law, despite the fact that they are not exempt.  Plaintiffs, the Nationwide FLSA Collective Plaintiffs, and the members of the State Law Subclasses worked overtime hours, as defined by the applicable federal and state law, and are and have been entitled to premium compensation at one and one half times the regular hourly rate ("overtime compensation") for those hours.

27.     Defendant unlawfully and improperly deducted monies from Plaintiffs, the Nationwide FLSA Collective Plaintiffs, and the members of the Ohio Subclass for, including but not limited to, costs that they failed to recoup from mortgage applicants including credit report costs and/or appraisal fees that were higher than what was collected from the customer.

28.     Defendant has willfully refused to pay Plaintiffs, the Nationwide FLSA Collective Plaintiffs, and the members of the State Law Subclasses the required overtime compensation for overtime hours worked (and, for the Ohio Subclass, monies improperly deducted), and have failed to keep records as required by law.

29.     Defendant's practices violate the FLSA and the state law pleaded herein. Plaintiffs seek injunctive and declaratory relief, overtime compensation for all overtime work required, suffered, or permitted by Defendant, monies improperly deducted, liquidated and/or other damages and penalties as permitted by applicable law, interest, and attorneys' fees and interest.

## FACTUAL ALLEGATIONS

30.     Defendant is principally involved in retail banking, corporate and institutional banking, asset management, and residential mortgage banking, providing many products and services nationally, including the following states: Ohio, Illinois, Indiana, California, Kentucky, Maryland, Massachusetts, Missouri, New Jersey, New York, Pennsylvania, and Washington.

31.     Plaintiff Struck worked for Defendant as an MLO from approximately September 2008 to September 2009 at offices in the central Ohio area, including 6274 Pullman Drive, Lewis Center, Ohio 43035, and 6680 Perimeter Drive, Dublin, Ohio 43017.

32.     Plaintiff Kusserow worked for Defendant as an MLO from approximately June 2008 to April 2010 at offices in the central Ohio area, including 3500 West Broad Street, Columbus, Ohio 43204, 5000 West Broad Street, Columbus, Ohio 43228, and 1435 West Broad Street Columbus, Ohio 43222.

33.     Plaintiff Marrero worked for Defendant as an MLO from approximately 2008 to January 2010 at offices in Chicago, Illinois.

34.     Plaintiff Goodman worked for Defendant as an MLO from approximately March 2008 to August 2011 at an office in Indianapolis, Indiana.

35.     Plaintiff Skidmore worked for Defendant as an MLO from approximately January 2010 to February 2011 at offices in the Santa Barbara, California area.

36.     Plaintiff Howell worked for Defendant as an MLO from approximately January 2007 to August 2011 at offices in the Louisville, Kentucky area.

37.     Plaintiff Sutton worked for Defendant as an MLO from approximately January 2009 to November 2009 at offices in the Greenbelt, Maryland area.

38.     Plaintiff Altieri worked for Defendant as an MLO from approximately July 2003 to April 2011 at offices in the Hyannis, Massachusetts area.

39.     Plaintiff McDermott worked for Defendant as an MLO from approximately October 2008 to February 2012 at offices in the Clayton, Missouri area.

40.     Plaintiff Capaldi worked for Defendant as an MLO from approximately January 2000 to December 2011 at offices in the Laurel, New Jersey area.

41.     Plaintiff Aiossa worked for Defendant as an MLO from approximately February 2011 to December 2012 at offices in the Garden City, New York area.

42.     Plaintiff Mahrer worked for Defendant as an MLO from approximately January 2009 to April 2011 at offices in the Lancaster, Pennsylvania area.

43.     Plaintiff Wiyrick worked for Defendant as an MLO from approximately November 2009 to March 2010 at offices in the Spokane, Washington area.

44.     Plaintiffs' jobs, as well as the jobs of those similarly situated, as MLOs consisted of preparing loan applications, collecting documentation from potential borrowers, and engaging in customer contact through telephone and email.

45.     During their employment, Plaintiffs, as well as those similarly situated, were required to log into the company's computer system and engage in the origination and production of home loans using Defendant's loan origination system.

46.     During their employment, Plaintiffs, as well as those similarly situated, had no discretion to change rates or to offer products that did not satisfy Defendant's criteria. Additionally, MLOs had no authority to independently approve potential mortgage applications.

47.     Plaintiffs, as well as those similarly situated, performed non-exempt duties for Defendant during the applicable statute of limitations period.

48. Defendant compensated Plaintiffs, as well as those similarly situated, on a pure commission basis with a monthly repayable draw. Neither Plaintiffs, nor those similarly situated, received overtime for hours worked in excess of 40.

49. Plaintiffs, as well as those similarly situated, received commissions only on loans that actually closed and were recorded.

50. Defendant frequently deducted monies from Plaintiffs' commissions, as well as those similarly situated, for costs that it failed to recoup from mortgage applicants including, but not limited to, credit report costs and/or appraisal fees.

51. Defendant compensated its MLOs in the same way pursuant to uniform corporate policies, practices, procedures, and standards throughout the United States as evidenced by the annual "Incentive Compensation Plan."

52. The work performed by Plaintiffs, as well as those similarly situated, was an integral part of Defendant's business because it brought customers to Defendant's place of business and the loans were held by Defendant.

53. The work performed by Plaintiffs, as well as those similarly situated, did not require any special skill, extensive training or expert knowledge. Rather, through basic training provided and mandated by Defendant, the MLOs were able to quickly learn the skills necessary to competently perform their job functions.

54. Plaintiffs, as well as those similarly situated, worked in excess of forty (40) hours per week in one or more weeks during their employment with Defendant.

55. Defendant never paid the Plaintiffs, as well as those similarly situated, time-and-one-half wages for overtime hours worked. Defendant improperly classified the Plaintiffs as exempt employees.

56.     Defendant has intentionally, willfully and improperly failed to pay overtime compensation to Plaintiffs and all other similarly situated employees for overtime hours worked.

## NATIONWIDE COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiffs bring this FLSA claim as a collective action pursuant to 29 U.S.C. §216(b) on behalf of all Nationwide FLSA Collective Plaintiffs who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers at any of the Defendant's banks/branches across the country, during any workweek between November 3, 2008 and April 4, 2011, who were compensated based on Defendant's Incentive Compensation Plan.

These individuals are referred to as "the Nationwide §216 Class" or "the Nationwide §216(b) Class members."

58.     Collective Action treatment of Plaintiffs' FLSA claims is appropriate because Plaintiffs and the Nationwide §216(b) Class have been subjected to the common business practices referenced in the above paragraphs and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, whether Defendant's common payroll practices fail to properly compensate class members for the entire time worked.

## OHIO SUBCLASS RULE 23 CLASS ALLEGATIONS

59.     Plaintiffs Struck and Kusserow bring claims for relief for violation of Ohio's wage and hour laws individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Ohio Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers at any of Defendant's Ohio banks/branches, during any workweek since November 3, 2008, who were compensated based on Defendant's Incentive Compensation Plan.

These individuals are referred to as "the Ohio Subclass" or "the Ohio Subclass members."

60.     The Ohio Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

61.     Plaintiffs Struck and Kusserow are members of the Ohio Subclass, and their claims are typical of the claims of other Ohio Subclass members.  Plaintiffs Struck and Kusserow have no interests that are antagonistic to or in the conflict with the interests of other class members.

62.     Plaintiffs Struck and Kusserow will fairly and adequately represent the Ohio Subclass and its interests.  Moreover, Plaintiffs Struck and Kusserow have retained competent and experienced counsel who will effectively represent the interests of the Ohio Subclass.

63.     Questions of law and fact are common to the Ohio Subclass, as described in the above paragraphs.

64.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Ohio Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Ohio Subclass members would as a practical matter be dispositive of the interests of non-party Ohio Subclass members.

65.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Ohio Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiffs Struck, Kusserow and the Ohio Subclass as a whole.

66.     Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting

only individual Ohio Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

**ILLINOIS SUBCLASS RULE 23 CLASS ALLEGATIONS**

67.     Plaintiff Marrero brings her claims for relief for violations of Illinois state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Illinois Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of Illinois during any workweek between December 16, 2008 and April 4, 2011.

These individuals are referred to as "the Illinois Subclass" or "the Illinois Subclass Members."

68.     The Illinois Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

69.     Plaintiff Marrero is a member of the Illinois Subclass, and her claims are typical of the claims of other Illinois Subclass members.  Plaintiff Marrero has no interests that are antagonistic to or in conflict with the interests of other class members.

70.     Plaintiff Marrero will fairly and adequately represent the Illinois Subclass and its interests.  Moreover, Plaintiff Marrero has retained competent and experienced counsel who will effectively represent the interests of the Illinois Subclass.

71.     Questions of law and fact are common to the Illinois Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.     Whether Defendant improperly labeled and treated Plaintiff Marrero and the members of the Illinois Subclass as exempt;

b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Marrero and the members of the Illinois Subclass in violation of the IMWL and the FLSA;

c.      Whether Defendant employed Plaintiff Marrero and the members of the Illinois Subclass within the meaning of Illinois law;

d.      Whether the primary duties of Plaintiff Marrero and the members of the Illinois Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.      The proper measure of damages sustained by Plaintiff Marrero; and

f.      Whether Defendant's actions were "willful."

72.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Illinois Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Illinois Subclass members would as a practical matter be dispositive of the interests of non-party Illinois Subclass members.

73.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Illinois Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Marrero and the Illinois Subclass as a whole.

74.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual Illinois Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## INDIANA SUBCLASS RULE 23 CLASS ALLEGATIONS

75.     Plaintiff Goodman brings her claims for relief for violations of Indiana state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Indiana Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of Indiana during any workweek between March 19, 2010 and April 4, 2011.

These individuals are referred to as "the Indiana Subclass" or "the Indiana Subclass Members."

76.     The Indiana Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

77.     Plaintiff Goodman is a member of the Indiana Subclass, and her claims are typical of the claims of other Indiana Subclass members.  Plaintiff Goodman has no interests that are antagonistic to or in conflict with the interests of other class members.

78.     Plaintiff Goodman will fairly and adequately represent the Indiana Subclass and its interests.  Moreover, Plaintiff Goodman has retained competent and experienced counsel who will effectively represent the interests of the Indiana Subclass.

79.     Questions of law and fact are common to the Indiana Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

        a.      Whether Defendant improperly labeled and treated Plaintiff Goodman and the members of the Indiana Subclass as exempt;

b.　　　Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Goodman and the members of the Indiana Subclass in violation of the IWPS and the FLSA;

c.　　　Whether Defendant employed Plaintiff Goodman and the members of the Indiana Subclass within the meaning of Indiana law;

d.　　　Whether the primary duties of Plaintiff Goodman and the members of the Indiana Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.　　　The proper measure of damages sustained by Plaintiff Goodman; and

f.　　　Whether Defendant's actions were "willful."

80.　　　Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Indiana Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Indiana Subclass members would as a practical matter be dispositive of the interests of non-party Indiana Subclass members.

81.　　　Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Indiana Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Goodman and the Indiana Subclass as a whole.

82.　　　Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual Indiana Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## **CALIFORNIA SUBCLASS RULE 23 CLASS ALLEGATIONS**

83.     Plaintiff Skidmore brings his claims for relief for violation of California state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the California Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of California during any workweek between March 19, 2008 and April 4, 2011.

These individuals are referred to as "the California Subclass" or "the California Subclass Members."

84.     Plaintiff Skidmore regularly ate lunch while he worked and worked through his rest periods. Upon information and belief, other MLOs and management employees observed Plaintiff Skidmore eating at his desk and working through lunch.

85.     Defendant did not keep accurate records of the hours Plaintiff Skidmore and other MLOs worked.  Defendant did not track whether Plaintiff and other MLOs took meal or rest periods. Because Defendant did not pay Plaintiff and other MLOs for all hours worked, including overtime hours, the wage statements issued by Defendant and provided to Plaintiff Skidmore did not accurately reflect all of his hours worked.

86.     Because Defendant did not pay Plaintiff Skidmore and other MLOs for all overtime hours worked, Defendant did not provide Plaintiff Skidmore and other MLOs all wages owed at the time they were no longer employed by Defendant.

87.     The California Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

88.     Plaintiff Skidmore is a member of the California Subclass, and his claims are typical of the claims of other California Subclass members.  Plaintiff Skidmore has no interests that are antagonistic to or in conflict with the interests of other class members.

89.     Plaintiff Skidmore will fairly and adequately represent the California Subclass and its interests.  Moreover, Plaintiff Skidmore has retained competent and experienced counsel who will effectively represent the interests of the California Subclass.

90.     Questions of law and fact are common to the California Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.     Whether Defendant improperly labeled and treated Plaintiff Skidmore and the members of the California Subclass as exempt;

b.     Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Skidmore and the members of the California Subclass in violation of the California Labor Code §§ 510 and 1194, California Industrial Wage Order No. 4 (8 C.C.R. § 1140), and the FLSA;

c.     Whether Defendant employed Plaintiff Skidmore and the members of the California Subclass within the meaning of California law;

d.     Whether Plaintiff Skidmore and the members of the California Subclass who are no longer employed by Defendant are entitled to waiting time penalties pursuant to California Labor Code § 203;

e.     Whether Defendant's policies and practices provide and/or authorize meal and rest periods;

f.      Whether Defendant provided adequate itemized wage statements to Plaintiff Skidmore and the members of the California Subclass pursuant to California Labor Code § 226;

g.      Whether Defendant's conduct violated the California Unfair Practices Act set forth in the Business and Professions Code § 17200 *et seq*. by violating the state and federal laws as set forth herein;

h.      The proper measure of damages sustained by Plaintiff Skidmore; and

i.      Whether Defendant's actions were "willful."

91.      Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual California Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual California Subclass members would as a practical matter be dispositive of the interests of non-party California Subclass members.

92.      Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the California Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Skidmore and the California Subclass as a whole.

93.      Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual California Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## KENTUCKY SUBCLASS RULE 23 CLASS ALLEGATIONS

94.     Plaintiff Howell brings her claims for relief for violations of Kentucky state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Kentucky Subclass who are part of the following class:

>       All individuals employed as Retail Mortgage Loan Officers by Defendant in the Commonwealth of Kentucky during any workweek between March 19, 2007 and April 4, 2011.

These individuals are referred to as "the Kentucky Subclass" or "the Kentucky Subclass Members."

95.     The Kentucky Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

96.     Plaintiff Howell is a member of the Kentucky Subclass, and her claims are typical of the claims of other Kentucky Subclass members. Plaintiff Howell has no interests that are antagonistic to or in conflict with the interests of other class members.

97.     Plaintiff Howell will fairly and adequately represent the Kentucky Subclass and its interests. Moreover, Plaintiff Howell has retained competent and experienced counsel who will effectively represent the interests of the Kentucky Subclass.

98.     Questions of law and fact are common to the Kentucky Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.      Whether Defendant improperly labeled and treated Plaintiff Howell and the members of the Kentucky Subclass as exempt;

b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Howell and the members of the Kentucky Subclass in violation of the KOL and the FLSA;

      c.      Whether Defendant employed Plaintiff Howell and the members of the Kentucky Subclass within the meaning of Kentucky law;

      d.      Whether the primary duties of Plaintiff Howell and the members of the Kentucky Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

      e.      The proper measure of damages sustained by Plaintiff Howell; and

      f.      Whether Defendant's actions were "willful."

99.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Kentucky Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Kentucky Subclass members would as a practical matter be dispositive of the interests of non-party Kentucky Subclass members.

100.   Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Kentucky Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Howell and the Kentucky Subclass as a whole.

101.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual Kentucky Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## MARYLAND SUBCLASS RULE 23 CLASS ALLEGATIONS

102.   Plaintiff Sutton brings his claims for relief for violations of Maryland state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Maryland Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of Maryland during any workweek between March 19, 2009 and April 4, 2011.

These individuals are referred to as "the Maryland Subclass" or "the Maryland Subclass Members."

103.   The Maryland Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

104.   Plaintiff Sutton is a member of the Maryland Subclass, and his claims are typical of the claims of other Maryland Subclass members.  Plaintiff Sutton has no interests that are antagonistic to or in conflict with the interests of other class members.

105.   Plaintiff Sutton will fairly and adequately represent the Maryland Subclass and its interests.  Moreover, Plaintiff Sutton has retained competent and experienced counsel who will effectively represent the interests of the Maryland Subclass.

106.   Questions of law and fact are common to the Maryland Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.   Whether Defendant improperly labeled and treated Plaintiff Sutton and the members of the Maryland Subclass as exempt;

b.   Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Sutton and the members of the Maryland Subclass in violation of the MWHL and the FLSA;

c.      Whether Defendant employed Plaintiff Sutton and the members of the Maryland Subclass within the meaning of Maryland law;

d.      Whether the primary duties of Plaintiff Sutton and the members of the Maryland Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.      The proper measure of damages sustained by Plaintiff Sutton; and

f.      Whether Defendant's actions were "willful."

107.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Maryland Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Maryland Subclass members would as a practical matter be dispositive of the interests of non-party Maryland Subclass members.

108.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Maryland Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Sutton and the Maryland Subclass as a whole.

109.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual Maryland Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## MASSACHUSETTS SUBCLASS RULE 23 CLASS ALLEGATIONS

110.    Plaintiff Altieri brings her claims for relief for violations of Massachusetts state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Massachusetts Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the Commonwealth of Massachusetts during any workweek between March 19, 2010 and April 4, 2011.

These individuals are referred to as "the Massachusetts Subclass" or "the Massachusetts Subclass Members."

111.    The Massachusetts Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

112.    Plaintiff Altieri is a member of the Massachusetts Subclass, and her claims are typical of the claims of other Massachusetts Subclass members.  Plaintiff Altieri has no interests that are antagonistic to or in conflict with the interests of other class members.

113.    Plaintiff Altieri will fairly and adequately represent the Massachusetts Subclass and its interests.  Moreover, Plaintiff Altieri has retained competent and experienced counsel who will effectively represent the interests of the Massachusetts Subclass.

114.    Questions of law and fact are common to the Massachusetts Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

      a.     Whether Defendant improperly labeled and treated Plaintiff Altieri and the members of the Massachusetts Subclass as exempt;

      b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Altieri and the members of the Massachusetts Subclass in violation of the MWA and the FLSA;

      c.      Whether Defendant employed Plaintiff Altieri and the members of the Massachusetts Subclass within the meaning of Massachusetts law;

      d.      Whether the primary duties of Plaintiff Altieri and the members of the Massachusetts Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

      e.      The proper measure of damages sustained by Plaintiff Altieri; and

      f.      Whether Defendant's actions were "willful."

115.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Massachusetts Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Massachusetts Subclass members would as a practical matter be dispositive of the interests of non-party Massachusetts Subclass members.

116.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Massachusetts Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Altieri and the Massachusetts Subclass as a whole.

117.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual Massachusetts Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### MISSOURI SUBCLASS RULE 23 CLASS ALLEGATIONS

118.    Plaintiff McDermott brings her claims for relief for violations of Missouri state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Missouri Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of Missouri during any workweek between March 19, 2010 and April 4, 2011.

These individuals are referred to as "the Missouri Subclass" or "the Missouri Subclass Members."

119.    The Missouri Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

120.    Plaintiff McDermott is a member of the Missouri Subclass, and her claims are typical of the claims of other Missouri Subclass members.  Plaintiff McDermott has no interests that are antagonistic to or in conflict with the interests of other class members.

121.    Plaintiff McDermott will fairly and adequately represent the Missouri Subclass and its interests.  Moreover, Plaintiff McDermott has retained competent and experienced counsel who will effectively represent the interests of the Missouri Subclass.

122.    Questions of law and fact are common to the Missouri Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

        a.    Whether Defendant improperly labeled and treated Plaintiff McDermott and the members of the Missouri Subclass as exempt;

b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff McDermott and the members of the Missouri Subclass in violation of the MMWL and the FLSA;

c.      Whether Defendant employed Plaintiff McDermott and the members of the Missouri Subclass within the meaning of Missouri law;

d.      Whether the primary duties of Plaintiff McDermott and the members of the Missouri Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.      The proper measure of damages sustained by Plaintiff McDermott; and

f.      Whether Defendant's actions were "willful."

123.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Missouri Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Missouri Subclass members would as a practical matter be dispositive of the interests of non-party Missouri Subclass members.

124.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Missouri Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff McDermott and the Missouri Subclass as a whole.

125.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual Missouri Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## NEW JERSEY SUBCLASS RULE 23 CLASS ALLEGATIONS

126.    Plaintiff Capaldi brings his claims for relief for violations of New Jersey state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the New Jersey Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of New Jersey during any workweek between March 19, 2010 and April 4, 2011.

These individuals are referred to as "the New Jersey Subclass" or "the New Jersey Subclass Members."

127.    The New Jersey Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

128.    Plaintiff Capaldi is a member of the New Jersey Subclass, and his claims are typical of the claims of other New Jersey Subclass members.  Plaintiff Capaldi has no interests that are antagonistic to or in conflict with the interests of other class members.

129.    Plaintiff Capaldi will fairly and adequately represent the New Jersey Subclass and its interests.  Moreover, Plaintiff Capaldi has retained competent and experienced counsel who will effectively represent the interests of the New Jersey Subclass.

130.    Questions of law and fact are common to the New Jersey Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

  a.    Whether Defendant improperly labeled and treated Plaintiff Capaldi and the members of the New Jersey Subclass as exempt;

b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Capaldi and the members of the New Jersey Subclass in violation of the NJWHL and the FLSA;

c.      Whether Defendant employed Plaintiff Capaldi and the members of the New Jersey Subclass within the meaning of New Jersey law;

d.      Whether the primary duties of Plaintiff Capaldi and the members of the New Jersey Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.      The proper measure of damages sustained by Plaintiff Capaldi; and

f.      Whether Defendant's actions were "willful."

131.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual New Jersey Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual New Jersey Subclass members would as a practical matter be dispositive of the interests of non-party New Jersey Subclass members.

132.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the New Jersey Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Capaldi and the New Jersey Subclass as a whole.

133.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual New Jersey Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### NEW YORK SUBCLASS RULE 23 CLASS ALLEGATIONS

134.    Plaintiff Aiossa brings his claims for relief for violations of New York state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the New York Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of New York during any workweek between March 19, 2006 and April 4, 2011.

These individuals are referred to as "the New York Subclass" or "the New York Subclass Members."

135.    The New York Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

136.    Plaintiff Aiossa is a member of the New York Subclass, and his claims are typical of the claims of other New York Subclass members.  Plaintiff Aiossa has no interests that are antagonistic to or in conflict with the interests of other class members.

137.    Plaintiff Aiossa will fairly and adequately represent the New York Subclass and its interests.  Moreover, Plaintiff Aiossa has retained competent and experienced counsel who will effectively represent the interests of the New York Subclass.

138.    Questions of law and fact are common to the New York Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.      Whether Defendant improperly labeled and treated Plaintiff Aiossa and the members of the New York Subclass as exempt;

b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Aiossa and the members of the New York Subclass in violation of the NYLL and the FLSA;

c.      Whether Defendant employed Plaintiff Aiossa and the members of the New York Subclass within the meaning of New York law;

d.      Whether the primary duties of Plaintiff Aiossa and the members of the New York Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.      The proper measure of damages sustained by Plaintiff Aiossa; and

f.      Whether Defendant's actions were "willful."

139.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual New York Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual New York Subclass members would as a practical matter be dispositive of the interests of non-party New York Subclass members.

140.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the New York Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Aiossa and the New York Subclass as a whole.

141.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual New York Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

**PENNSYLVANIA SUBCLASS RULE 23 CLASS ALLEGATIONS**

142.    Plaintiff Mahrer brings his claims for relief for violations of Pennsylvania state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Pennsylvania Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the Commonwealth of Pennsylvania during any workweek between March 19, 2009 and April 4, 2011.

These individuals are referred to as "the Pennsylvania Subclass" or "the Pennsylvania Subclass Members."

143.    The Pennsylvania Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

144.    Plaintiff Mahrer is a member of the Pennsylvania Subclass, and his claims are typical of the claims of other Pennsylvania Subclass members.  Plaintiff Mahrer has no interests that are antagonistic to or in conflict with the interests of other class members.

145.    Plaintiff Mahrer will fairly and adequately represent the Pennsylvania Subclass and its interests.  Moreover, Plaintiff Mahrer has retained competent and experienced counsel who will effectively represent the interests of the Pennsylvania Subclass.

146.    Questions of law and fact are common to the Pennsylvania Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.    Whether Defendant improperly labeled and treated Plaintiff Mahrer and the members of the Pennsylvania Subclass as exempt;

b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Mahrer and the members of the Pennsylvania Subclass in violation of the PMWA and the FLSA;

c.      Whether Defendant employed Plaintiff Mahrer and the members of the Pennsylvania Subclass within the meaning of Pennsylvania law;

d.      Whether the primary duties of Plaintiff Mahrer and the members of the Pennsylvania Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.      The proper measure of damages sustained by Plaintiff Mahrer; and

f.      Whether Defendant's actions were "willful."

147.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Pennsylvania Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Pennsylvania Subclass members would as a practical matter be dispositive of the interests of non-party Pennsylvania Subclass members.

148.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Pennsylvania Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Mahrer and the Pennsylvania Subclass as a whole.

149.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual Pennsylvania Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## WASHINGTON SUBCLASS RULE 23 CLASS ALLEGATIONS

150.    Plaintiff Wiyrick brings her claims for relief for violations of Washington state law individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), on behalf of the Washington Subclass who are part of the following class:

> All individuals employed as Retail Mortgage Loan Officers by Defendant in the State of Washington during any workweek between March 19, 2009 and April 4, 2011.

These individuals are referred to as "the Washington Subclass" or "the Washington Subclass Members."

151.    The Washington Subclass includes, upon information and belief, hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

152.    Plaintiff Wiyrick is a member of the Washington Subclass, and her claims are typical of the claims of other Washington Subclass members.  Plaintiff Wiyrick has no interests that are antagonistic to or in conflict with the interests of other class members.

153.    Plaintiff Wiyrick will fairly and adequately represent the Washington Subclass and its interests.  Moreover, Plaintiff Wiyrick has retained competent and experienced counsel who will effectively represent the interests of the Washington Subclass.

154.    Questions of law and fact are common to the Washington Subclass and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.    Whether Defendant improperly labeled and treated Wiyrick and the members of the Washington Subclass as exempt;

b.      Whether Defendant unlawfully failed to pay appropriate overtime compensation to Plaintiff Wiyrick and the members of the Washington Subclass in violation of the WMWA and the FLSA;

c.      Whether Defendant employed Plaintiff Wiyrick and the members of the Washington Subclass within the meaning of Washington law;

d.      Whether the primary duties of Plaintiff Wiyrick and the members of the Washington Subclass are or were "directly related to the management or general business operations" of Defendant or its customers;

e.      The proper measure of damages sustained by Plaintiff Wiyrick; and

f.      Whether Defendant's actions were "willful."

155.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual Washington Subclass members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or because adjudications with respect to individual Washington Subclass members would as a practical matter be dispositive of the interests of non-party Washington Subclass members.

156.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Washington Subclass, making appropriate declaratory and injunctive relief with respect to Plaintiff Wiyrick and the Washington Subclass as a whole.

157.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only

individual Washington Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

<u>**COUNT I**</u>
**(Asserting Violations of the FLSA)**

158.    All previous paragraphs are incorporated as though fully set forth herein.

159.    The FLSA requires that covered employees be compensated for every hour worked in a workweek.  *See* 29 U.S.C. § 206(a)-(b).

160.    The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek.  *See* 29 U.S.C. § 207(a)(1).

161.    Plaintiffs, and the Nationwide §216(b) Class members, are/were covered employees entitled to the FLSA's protections.

162.    Defendant is a covered employer required to comply with the FLSA's mandates.

163.    During all times material to this complaint Plaintiffs and the Nationwide §216(b) Class members are/were not exempt from receiving FLSA overtime benefits because, *inter alia*, they were not "executive," "computer," "administrative," or "professional" employees, as those terms are defined under the FLSA.  *See* 29 C.F.R. §§ 541.0, *et seq.*

164.    Defendant has violated the FLSA with respect to Plaintiffs and the Nationwide §216(b) Class members by, *inter alia*, failing to compensate them at applicable straight time and/or time-and-one-half overtime rates for any hours worked over forty hours in a workweek. Plaintiffs and the Nationwide §216(b) Class members routinely worked in excess of forty (40) hours per workweek.  Defendant failed to monitor their hours and misclassified them as exempt employees.

165.    Defendant has violated the FLSA with respect to Plaintiffs and the Nationwide §216(b) Class members by, *inter alia*, taking improper deductions from their pay as alleged herein, including but not limited to costs that were unreimbursed by customers, including, but not limited to, appraisal fees and credit report fees.

166.    In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**COUNT II**

(**Ohio Wage Act, Brought by Plaintiffs Struck and Kusserow on Behalf of Themselves and the Ohio Subclass members**)

167.    All previous paragraphs are incorporated as though fully set forth herein.

168.    The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek.  *See* O.R.C. §§ 4111 *et seq.*

169.    The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937."  *See* O.R.C. § 4111.03(A).

170.    During all times material to this complaint, Defendant was a covered employer required to comply with the Ohio Wage Act's mandates.

171.    During all times material to this complaint Plaintiffs Struck, Kusserow, and the Ohio Subclass members were covered employees entitled to the Ohio Wage Act's protections.

172.    During all times material to this complaint Plaintiffs and the Ohio Subclass members are/were not exempt from receiving overtime benefits under the Ohio Wage Act because, *inter alia*, they were not an "executive," "administrative," or "professional" employee,

as those terms are defined under the FLSA. *See* O.R.C. § 4111.03(A); *see also 29* C.F.R. §§ 541.0, *et seq.*

173.    Defendant has violated the Ohio Wage Act with respect to Plaintiffs Struck, Kusserow, and the Ohio Subclass by, *inter alia*, failing to compensate them at applicable straight time and/or time-and-one-half overtime rates for the entire time period worked. Plaintiffs Struck, Kusserow, and the Ohio Subclass routinely worked in excess of forty (40) hours in a workweek. Defendant failed to monitor hours worked by Plaintiffs Struck, Kusserow, and the Ohio Subclass and misclassified Plaintiffs Struck, Kusserow, and the Ohio Subclass as exempt employees.

174.    Defendant has violated the Ohio Wage Act with respect to Plaintiffs Struck, Kusserow and the Ohio Subclass members by, *inter alia*, taking improper deductions from their pay as alleged herein, including but not limited to costs that were unreimbursed by customers, including, but not limited to, appraisal fees and/or credit report fees.

175.    In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

## <u>COUNT III</u>
**(Ohio Prompt Pay Act ("OPPA"), Brought by Plaintiffs Struck and Kusserow on Behalf of Themselves and the Ohio Subclass members)**

176.    All previous paragraphs are incorporated as though fully set forth herein.

177.    During all times material to this complaint, Defendant was an entity covered by the OPPA and Plaintiffs Struck, Kusserow and the Ohio Subclass members are/were employed by Defendant within the meaning of the OPPA.

178.    The OPPA requires that Defendant pay Plaintiffs Struck, Kusserow and the Ohio Subclass members all wages, including unpaid overtime and the pay that was improperly

deducted, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month.  *See* O.R.C. §4113.15(A).

179.    During all times material to this complaint, Plaintiffs Struck, Kusserow and the Ohio Subclass members are/were not paid wages, described as overtime wages at one and one-half times their regular hourly rate and the pay improperly deducted, within thirty (30) days of performing the work.  *See*, O.R.C. §4113.15(B).

180.    Plaintiffs Struck and Kusserow's unpaid wages and those of the Ohio Subclass remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

181.    In violating the OPPA, Defendant acted willfully and with reckless disregard of clearly applicable Ohio law.

## COUNT IV
### (Alleging Violations of the Recordkeeping Requirements of the Ohio Wage Act Brought by Plaintiffs Struck and Kusserow on Behalf of Themselves and the Ohio Subclass members)

182.    All previous paragraphs are incorporated as though fully set forth herein.

183.    The Ohio Wage Act requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek.  *See* O.R.C. § 4111.08, *see also*, 29 U.S.C. § 516.2, *et seq.*

184.    During all times material to this complaint, Defendant was a covered employer required to comply with the Ohio Wage Act's mandates.

185.    During all times material to this complaint, Plaintiffs Struck, Kusserow and the Ohio Subclass members were covered employees entitled to the Ohio Wage Act's protections.

186.     Defendant violated the Ohio Wage Act with respect to Plaintiffs Struck, Kusserow and the Ohio Subclass members by failing to maintain accurate records of their actual hours worked each workday and within each workweek.

187.     Ohio recognizes a private right of action for record-keeping violations of the Ohio Wage Act pursuant to Ohio Const. Art. 2, § 34a; Ohio R.C. § 4111.14 and *Frisby v. Keith D. Weiner & Associates Co., LPA,* 669 F. Supp. 2d 863 (N.D. Ohio 2009).

188.     In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

### COUNT V
**(Alleging Violations of the Illinois Minimum Wage Law for Failure to Pay Overtime Wages, 820 lll. Comp. Stat. § 105/1 *et seq.*, 56 ll. Admin. Code § 210.100 *et seq.* Brought by Plaintiff Marrero on Behalf of Herself and the Illinois Subclass Members)**

189.     Plaintiff Marrero and the Illinois Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

190.     This count arises from the violation of the IMWL, 820 lll. Comp. Stat. § 105/1 *et seq.*, and the regulations promulgated there under, 56 ll. Admin. Code § 210.100 *et. seq.*, for Defendant's failure to pay Plaintiff Marrero and the Illinois Subclass earned overtime pay for all weeks in which they worked in excess of forty (40) hours.

191.     Plaintiff Marrero and the Illinois Subclass are employees entitled to pay at a rate of one and one-half their regular rate pursuant to the IMWL for all hours worked in excess of forty (40) per workweek.

192.     Plaintiff Marrero and the Illinois Subclass routinely work(ed) in excess of forty (40) hours per week, but did not receive compensation from Defendant at the overtime rate.

193.     In denying overtime compensation, Defendant violated the IMWL.

194.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Marrero and the Illinois Subclass have suffered and will continue to suffer a loss of income and other damages.  Plaintiff Marrero and the Illinois Subclass are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

### COUNT VI
**(Alleging Violations of the Indiana Wage Payment Statute for Failure to Pay Overtime Wages, I.C. §§ 22-2-5-1, *et seq.*, Brought by Plaintiff Goodman on Behalf of Herself and the Indiana Subclass Members)**

195.     Plaintiff Goodman and the Indiana Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

196.     The foregoing conduct, as alleged, violated the I.C. §§ 22-2-5-1, *et seq.*

197.     At all relevant times, Defendant has been, and continues to be a "corporation . . . doing business in Indiana," within the meaning of I.C. § 22-2-5-l(a).

198.     Plaintiff Goodman and members of the Indiana Subclass are not salaried employees within the meaning of I.C. § 22-2-5-1.1, and are therefore not exempted from the requirements set forth in I.C. § 22-2-5-1.

199.     Defendant has failed to pay Plaintiff Goodman and the Indiana Subclass the amount due for all wages earned, including overtime wages, within the meaning of I. C. § 22-2-5-1.

200.     Defendant has failed to make payment to Plaintiff Goodman and the Indiana subclass of all wages earned, including overtime wages, and is liable to Plaintiff Goodman and the Indiana Subclass for their unpaid wages, in addition to liquidated damages for such failure in the amount of ten percent (10%) of the unpaid wages due payable per day, not exceeding double the amount of wages due, within the meaning of I.C. § 22-2-5-2.

201.    Defendant is liable to Plaintiff Goodman and the Indiana Subclass for attorneys'
fees and costs, pursuant to I. C. § 22-2-5-2.

**<u>COUNT VII</u>**

**(Alleging Violations of the California State Labor Code for Failure to Pay Overtime
Wages, Cal. Wage Order No. 4; Cal. Labor Code §§ 510, 1194, Brought by Plaintiff
Skidmore on Behalf of Himself and the California Subclass Members)**

202.    Plaintiff Skidmore and the California Subclass allege and incorporate by reference
the allegations in the preceding paragraphs.

203.    At all times relevant to this action, Plaintiff Skidmore and the California Subclass
were employed by Defendant within the meaning of the California Labor Code.

204.    By the course of conduct set forth above, Defendant violated Cal. Labor Code §§
510 and 1194.

205.    The California Labor Code requires employers, such as Defendant, to pay
overtime compensation to all non-exempt employees.

206.    Plaintiff Skidmore and the California Subclass were non-exempt employees
entitled to be paid overtime compensation for all hours worked.

207.    During the relevant statutory period, Plaintiff Skidmore and the California
Subclass worked in excess of eight hours in a work day and/or forty hours in a work week for
Defendant.

208.    During the relevant statutory period, Defendant failed and refused to pay Plaintiff
Skidmore and the California Subclass overtime compensation when they worked more than forty
hours in a workweek.

209.    Defendant had a policy and practice of failing and refusing to pay overtime wages
to Plaintiff Skidmore and the California Subclass for their hours worked.

210.    As a result of Defendant's failure to pay wages earned and due, Defendant violated the California Labor Code.

211.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff Skidmore and the California Subclass have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendant, prejudgment interest, and attorneys' fees and costs.

**COUNT VIII**
**(Alleging Violations of the California State Labor Code for Waiting Time Penalties, Cal. Labor Code §§ 201, 202 & 203, Brought by Plaintiff Skidmore on Behalf of Himself and the California Subclass Members)**

212.    Plaintiff Skidmore and the California Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

213.    California Labor Code §§ 201 and 202 require Defendant to pay employees all wages due within the time specified by law.  California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

214.    Plaintiff Skidmore and the California Subclass are entitled to unpaid overtime compensation, but to date have not received all such compensation.

215.    As a consequence of Defendant's willful conduct in not paying proper compensation for all hours worked, Plaintiff Skidmore and the California Subclass are entitled to up to thirty days' wages under Labor Code § 203, together with interest thereon, and attorneys' fees and costs.

## COUNT IX
**(Alleging Violations of the California State Labor Code for Failing to Provide Timely, Accurate, and Itemized Wage Statements, Cal. Wage Order No. 4, Cal. Labor Code § 226, Brought by Plaintiff Skidmore on Behalf of Himself and the California Subclass Members)**

216.     Plaintiff Skidmore and the California Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

217.     Defendant knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter alia*, hours worked, to Plaintiff Skidmore and the California Subclass in accordance with Labor Code § 226(a) and the IWC Wage Orders. Such failure caused injury to Plaintiff Skidmore and the California Subclass, by, among other things, impeding them from knowing the amount of wages to which they were and are entitled.

218.     Plaintiff Skidmore and the California Subclass are entitled to and seek injunctive relief requiring Defendant to comply with Labor Code 226(a) and further seeks the amount provided under Labor Code 226(e), including the greater of all actual damages or fifty dollars for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period.

## COUNT X
**(Alleging Violations of the California State Labor Code for Violations of the Rest Break and Meal Period Provisions, Cal. Wage Order No. 4, Cal. Labor Code §§ 226 *et seq.*, 512, Brought by Plaintiff Skidmore on Behalf of Himself and the California Subclass Members)**

219.     Plaintiff Skidmore and the California Subclass allege and incorporate by reference the allegations in the proceeding paragraphs.

220.     California Labor Code section 512 prohibits an employer from employing an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, or for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes.

221. Section 11 of Wage Order No. 4 provides (and at all times relevant hereto provided) in relevant part that:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time. If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

222. Section 12 of Wage Order No. 4 provides (and at all times relevant hereto provided) in relevant part that:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages. If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

223. California Labor Code section 226.7 prohibits any employer from requiring any employee to work during any meal or rest period mandated by an applicable IWC wage order, and provides that an employer that fails to provide an employee with a required rest break or

meal period shall pay that employee one additional hour of pay at the employee's regular rate of compensation for each work day that the employer does not provide a compliant meal or rest period.

224.     Defendant knowingly failed to provide Plaintiff Skidmore and the California Subclass with meal periods as required by law, and knowingly failed to authorize and permit Plaintiff Skidmore and the California Subclass to take rest periods as required by law. Plaintiff Skidmore and the California Subclass are therefore entitled to payment of the meal and rest period premiums as provided by law.

## COUNT XI
**(Alleging Violations of the California State Law for Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Brought by Plaintiff Skidmore on Behalf of Himself and the California Subclass Members)**

225.     Plaintiff Skidmore and the California Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

226.     The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

227.     Beginning at a date unknown to Plaintiff Skidmore, but at least as long ago as the year 2008, Defendant committed acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendant's conduct as herein alleged has injured Plaintiff Skidmore and the California Subclass by wrongfully denying them earned wages, and therefore was substantially injurious to Plaintiff Skidmore and the California Subclass.

228.    Defendant engaged in unfair competition in violation of the UCL by violating, *inter alia*, each of the following laws. Each of these violations constitutes an independent and separate violation of the UCL:

      a.  Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*;

      b.  California Labor Code §§ 510 & 1194; and

      c.  California Labor Code §§ 226.7 & 512.

229.    Defendant's course of conduct, acts, and practices in violation of the federal and California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendant's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

230.    The harm to Plaintiff Skidmore and the California Subclass in being wrongfully denied lawfully earned wages outweighed the utility, if any, of Defendant's policies or practices and therefore, Defendant's actions described herein constitute an unfair business practice or act within the meaning of the UCL.

231.    Pursuant to Business and Professions Code § 17200 *et seq.*, Plaintiff Skidmore and the California Subclass are entitled to restitution of the overtime earnings and other unpaid wages alleged herein that were withheld and retained by Defendant during a period that commences four years prior to the filing of this action, a permanent injunction requiring Defendant to pay required wages, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and other applicable law, and costs.

## COUNT XII

**(Alleging Violations of Kentucky Overtime Law for Failure to Pay Overtime Wages, KRS § 337.010 *et seq.*, Brought by Plaintiff Howell on Behalf of Herself and the Kentucky Subclass Members)**

232.    Plaintiff Howell and the Kentucky Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

233.    The foregoing conduct, as alleged, violates the Kentucky Overtime Law ("KOL"), KRS §§ 337.010, *et seq.*.

234.    At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of KRS § 337.010.

235.    At all relevant times, Defendant has employed, and/or continues to employ, "employee[s]," including the Plaintiff Howell and the Kentucky Subclass, within the meaning of KRS § 337.010.

236.    The Kentucky Overtime Law requires an employer, such as Defendant, to pay overtime compensation to all non-exempt employees. Plaintiff Howell and the Kentucky Subclass members are not exempt from overtime pay requirements under the KOL.

237.    At all relevant times, Defendant had a policy and practice of failing and refusing to pay overtime pay to Plaintiff Howell and the Kentucky Subclass Members for their hours worked in excess of forty hours per workweek, in violation of the KOL, KRS §§ 337.020, 337.060, and 337.285.

238.    As a result of Defendant's failure to pay wages earned and due, and its decision to withhold wages earned and due, to Plaintiff Howell and the Kentucky Subclass Members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant has violated, and continues to willfully violate the KOL, KRS §§ 337.055, 337.060, and 337.285.

239.     As a result of Defendant's failure to record, report, credit, and furnish Plaintiff Howell and the Kentucky Subclass members their respective wage and hour records showing all wages earned and due for all work performed, Defendant has failed to make, keep, preserve, and furnish such records in violation of the KOL, KRS §§ 337.070 and 337.320.

240.     Plaintiff Howell and the Kentucky Subclass members seek recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendant, pursuant to the KOL, KRS § 337.385(1).

241.     Plaintiff Howell and the Kentucky Subclass members seek damages in the amount of the respective unpaid wages earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek; liquidated damages under KRS § 337.385(1); punitive damages; and such other legal and equitable relief as the Court deems just and proper.

## COUNT XIII
**(Alleging Violations of Maryland Wage and Hour Law for Failure to Pay Overtime Wages, Md. Code Ann., Labor & Employment Article, § 3-401, *et seq.* Brought by Plaintiff Sutton on Behalf of Himself and the Maryland Subclass Members)**

242.     Plaintiff Sutton and the Maryland Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

243.     The matters set forth in this Count arise from Defendant's violation of the overtime compensation provisions of the Maryland Wage and Hour Law, Md. Code Ann., Labor & Employment Article, § 3-401, *et seq.* Plaintiff Sutton  brings this action on his own behalf and on behalf of the Maryland Subclass pursuant to Md. Code Ann., Labor & Employment Article, § 3-427.

244.     Pursuant to Md. Code Ann., Labor & Employment Article, §§ 3-415 and 420, for all weeks during which Plaintiff Sutton and the Maryland Subclass worked in excess of 40 hours,

Plaintiff Sutton and the Maryland Subclass were entitled to be compensated at one and one-half times their regular hourly rate of pay for time worked in excess of 40 hours per week.

245.    Defendant did not pay Sutton and the Maryland Subclass one and one-half times their regular hourly rate of pay for all time worked in excess of 40 hours per week.

246.    Defendant violated the MWHL by failing to compensate Plaintiff Sutton and the Maryland Subclass at one and one-half times their regular hourly rate of pay for all time worked in excess of 40 hours per week.

247.    Pursuant to Md. Code Ann., Labor & Employment Article, § 3-427, Plaintiff Sutton and the Maryland Subclass are entitled to recover the difference between the wage paid to the employee and the wage required under the statute, plus reasonable attorney's fees and costs.

## <u>COUNT XIV</u>
**(Alleging Violations of the Massachusetts Wage Act for Failure to Pay Overtime Wages, Mass. Gen. Laws ch. 151, §§ 1A and 1B Brought by Plaintiff Altieri on Behalf of Herself and the Massachusetts Subclass Members)**

248.    Plaintiff Altieri and the Massachusetts Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

249.    At all times relevant to this action, Plaintiff Altieri and the Massachusetts Subclass were employees of Defendant within the meaning of the MWA and entitled to its protections.  <u>See</u> Mass. Gen. Laws ch. 149, § 1.

250.    Defendant is an employer covered by the MWA.  <u>See</u> 455 Mass. Code Regs. §2.01.

251.    The MWA requires that "no employer in [Massachusetts] shall employ any of his employees in an occupation . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."  <u>See</u> Mass. Gen. Laws ch. 151, § 1A.

252.    Defendant violated the MWA by failing to compensate Plaintiff Altieri and the Massachusetts Subclass for hours worked in excess of 40 during the workweek and, with respect to such hours, failing to compensate them based upon the overtime premium pay rate of one and one-half times their regular pay rate.

253.    In violating the MWA, Defendant acted willfully and with reckless disregard of clearly applicable MWA provisions.

254.    Plaintiff Altieri and the Massachusetts Subclass seek damages in the amount of their underpayments based on Defendant's failure to pay wages due as provided by the MWA, and such other legal and equitable relief from Defendant's unlawful conduct as the Court deems proper.

255.    Plaintiff Altieri and the Massachusetts Subclass also seek recovery of all attorneys' fees, costs, liquidated damages, pre-judgment interest and expenses of this action that are available under the MWA.

### COUNT XV
**(Alleging Violations of the Missouri Wage and Hour Law for Failure to Pay Overtime Wages, R.S.Mo. § 290.500 *et seq.* Brought by Plaintiff McDermott on Behalf of Herself and the Missouri Subclass Members)**

256.    Plaintiff McDermott and the Missouri Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

257.    At all relevant times herein, Plaintiff McDermott and the Missouri Subclass have been entitled to the rights, protections, and benefits provided under Missouri's wage and hour laws, R.S. Mo. § 290.500 *et seq.*

258.    The MWHL regulates, among other things, the payment of overtime wages by employers, subject to limited exemptions not applicable herein. R.S. Mo. §§ 290.500(3) & (4); R.S. Mo.§ 290.505.1.

259.    During all times relevant to this action, Defendant was the "employer" of Plaintiff McDermott and the Missouri Subclass within the meaning of the MWHL.  R.S. Mo. §§ 290.500(3) & (4).

260.    During all times relevant to this action, Plaintiff McDermott and the Missouri Subclass were Defendant's "employees" within the meaning of the MWHL.  R.S. Mo. §§ 290.500(3).

261.    The MWHL exempts certain categories of employees from receiving overtime wage, none of which apply to Plaintiff McDermott or the Missouri Subclass. R.S. Mo. §§ 290.500(3).

262.    Pursuant to the MWHL, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of forty (40) hours in a workweek.  R.S. Mo. § 290.505.1.

263.    Defendant violated the MWHL by refusing and failing to pay Plaintiff McDermott and the Missouri Subclass overtime wages required under Missouri law.  R.S. Mo. § 290.505.1.

264.    Plaintiff McDermott and the Missouri Subclass are entitled to damages equal to all unpaid overtime wages due within the applicable statute of limitations with an additional equal amount as liquidated damages. R.S. Mo. § 290.527.

265.    Plaintiff McDermott and the Missouri Subclass are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

266.    Defendant is liable pursuant to R.S. Mo. § 290.527 for Plaintiff McDermott and the Missouri Subclass' costs and reasonable attorneys' fees incurred in this action.

## COUNT XVI

**(Alleging Violations of the New Jersey Wage and Hour Law for Failure to Pay Overtime Wages, N.J.S.A. §§ 34:11-56a, *et seq.* Brought by Plaintiff Capaldi on Behalf of Himself and the New Jersey Subclass Members)**

267.     Plaintiff Capaldi and the New Jersey Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

268.     At all times relevant to this action, Plaintiff Capaldi and the New Jersey Subclass were employees of Defendant within the meaning of the NJWHL and entitled to its protections. See N.J.S.A. § 34:11-56a1(h).

269.     Defendant is an employer covered by the NJWHL.  See N.J.S.A. § 34:11-56a1(g)

270.     The NJWHL provides that employees who work over 40 hours in a workweek shall receive "1 ½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week."  See N.J.S.A. § 34:11-56a4.

271.     Defendant violated the NJWHL by failing to pay Plaintiff Capaldi and the New Jersey Subclass the legally mandated overtime premium for hours worked in excess of 40 during the workweek.

272.     In violating the NJWHL, Defendant acted willfully and with reckless disregard of clearly applicable NJWHL.

273.     Plaintiff Capaldi and the New Jersey Subclass seek damages in the amount of their underpayments based on Defendant's failure to pay wages due as provided by the NJWHL, and such other legal and equitable relief from Defendant's unlawful conduct as the Court deems proper.

274.     Plaintiff Capaldi and the New Jersey Subclass also seek recovery of all attorneys' fees, costs, liquidated damages, pre-judgment interest and expenses of this action that are available under the NJWHL.

## COUNT XVII
**(Alleging Violations of the New York Labor Law for Failure to Pay Overtime Wages, Brought by Plaintiff Aiossa on Behalf of Himself and the New York Subclass Members)**

275.     Plaintiff Aiossa and the New York Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

276.     At all times relevant to this action, Plaintiff Aiossa and the New York Subclass were employees of Defendant within the meaning of the NYLL and entitled to its protections. See 12 N.Y.C.R.R. § 142-2.14(a)

277.     Defendant is an employer covered by the NYLL.  See N.Y.L.L. §2(6).

278.     The New York State Department of Labor has implemented a Minimum Wage Order that requires covered employees to receive overtime compensation "at a wage rate of 1 ½ times the employee's regular rate" to the same extent as the FLSA, see 12 N.Y.C.R.R. § 142-2.2, and violations of this provision are actionable under NYLL § 663.

279.     Defendant violated the NYLL by failing to pay Plaintiff Aiossa and the New York Subclass any compensation, including overtime premium compensation, for hours worked over 40 during the workweek.

280.     In violating the NYLL, Defendant acted willfully and with reckless disregard of clearly applicable NYLL provisions and, thus, committed a willful violation of the NYLL.

281.     Plaintiff Aiossa and the New York Subclass seek damages in the amount of their underpayments based on Defendant's failure to pay wages due as provided by the NYLL, and such other legal and equitable relief from Defendant's unlawful conduct as the Court deems proper.

282.     Plaintiff Aiossa and the New York Subclass also seek recovery of all attorneys' fees, costs, liquidated damages, pre-judgment interest and expenses of this action that are

available under the NYLL.

<u>**COUNT XVIII**</u>

**(Alleging Violations of the Pennsylvania Minimum Wage Act for Failure to Pay Overtime Wages, Brought by Plaintiff Mahrer on Behalf of Himself and the Pennsylvania Subclass Members)**

283.     Plaintiff Mahrer and the Pennsylvania Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

284.     At all times relevant to this action, Plaintiff Mahrer and the Pennsylvania Subclass were employees of Defendant within the meaning of the PMWA and entitled to its protections.  <u>See</u> 43 P.S. § 333.103(h).

285.     Defendant is an employer covered by the PMWA.  <u>See</u> 43 P.S. § 333.103(g).

286.     The PMWA entitles employees to compensation for every hour worked in a workweek.  <u>See</u> 43 P.S. § 333.104(a).

287.     The PMWA entitles employees to overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. <u>See</u> 43 Pa. Stat. Ann. § 333.104(c).

288.     Defendant violated the PMWA by failing to compensate Plaintiff Mahrer and the Pennsylvania Subclass for hours worked in excess of 40 during the workweek and, with respect to such hours, failing to compensate Plaintiff Mahrer and the Pennsylvania Subclass based upon the overtime premium pay rate of one and one-half times their regular pay rate.

289.     In violating the PMWA, Defendant acted willfully and with reckless disregard of clearly applicable PMWA provisions.

290.     Plaintiff Mahrer and the Pennsylvania Subclass seek damages in the amount of their underpayments based on Defendant's failure to pay wages due as provided by the PMWA,

and such other legal and equitable relief from Defendant's unlawful conduct as the Court deems proper.

291.    Plaintiff Mahrer and the Pennsylvania Subclass also seek recovery of all attorneys' fees, costs, liquidated damages, pre-judgment interest and expenses of this action that are available under the PMWA.

**COUNT XIV**

**(Alleging Violations of the Washington Minimum Wage Act for Failure to Pay Overtime Wages, Rev. Code Wash. §§ 49.12.005, 49.28.010, 49.46.010, & 49.52.070 *et seq.*, Brought by Plaintiff Wiyrick on Behalf of Himself and the Washington Subclass Members)**

292.    Plaintiff Wiyrick and the Washington Subclass allege and incorporate by reference the allegations in the preceding paragraphs.

293.    The foregoing conduct, as alleged, violates the Washington Minimum Wage Act, Rev. Code §§ 49.12.005, 49.28.010, 49.46.010, & 49.52.070 *et seq.*

294.    At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of the WMWA. Rev. Code Wash. § 49.46.010.

295.    At all relevant times, Defendant has employed, and continues to employ, employees, including Plaintiff Wiyrick and the Washington Subclass, within the meaning of the WMWA.  Rev. Code Wash. § 49.46.010.

296.    The WMWA requires an employer, such as Defendant, to pay overtime compensation to all non-exempt employees.  Rev. Code Wash. § 49.46.130

297.    Plaintiff Wiyrick and the Washington Subclass are not exempt from overtime pay requirements under Washington law.

298.    At all relevant times, Defendant had a policy and practice of willfully failing and refusing to pay overtime wages to Plaintiff Wiyrick and the Washington Subclass for their hours worked in excess of forty (40) hours per week.

299.    Washington law, Wash. Admin. Code § 296-126-050, requires employers to keep, and to furnish on request, records of each employee's hours worked and wages earned.

300.    Defendant's failure to keep and furnish on request the required records of hours worked for Plaintiff Wiyrick and the Washington Subclass was and is willful, knowing, and intentional.

301.    Allowing Defendant's record-keeping violations to continue would be a gross injustice to Plaintiff Wiyrick and the Washington Subclass.

302.    Plaintiff Wiyrick and the Washington Subclass seek recovery of attorneys' fees and costs of this action to be paid by Defendant, as provided by Washington law.

303.    Plaintiff Wiyrick and the Washington Subclass seek damages in the amount of twice the respective unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, less any such wages paid, as provided by Rev. Code Wash. § 49.52.070, and such other legal and equitable relief from Defendant's unlawful and willful conduct as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Nationwide FLSA Class, pray for relief as follows:

A.    Designation of this action as a collective action on behalf of the Nationwide FLSA Collective Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      An injunction prohibiting Defendant from engaging in future FLSA violations;

C.      Lost overtime wages and improperly deducted monies to the fullest extent permitted under the law;

D.      Liquidated damages, prejudgment interest, and monetary penalties to the fullest extent permitted under the law;

E.      Litigation costs, expenses, and attorney's fees to the fullest extent permitted under the law; and

F.      Such other and further relief as this Court deems just and proper.

**WHEREFORE**, the State Law Class Representatives, on behalf of themselves and all members of the State Law Subclasses they represent, pray for relief as follows:

A.      Certification of this action as a class action on behalf of the proposed State Law Subclasses;

B.      Designation of each State Law Class Representative as Representatives of the State Law Subclass they seek to represent;

C.      Appropriate equitable and injunctive relief to remedy Defendant's violations of state law, including but not necessarily limited to an injunction prohibiting Defendant from engaging in future violations;

D.      Lost overtime wages, improperly deducted monies, other wages due, unpaid meal and rest premiums (pursuant to California law) to the fullest extent permitted under the law;

E.      Liquidated damages, treble damages, prejudgment and post-judgment interest, and monetary penalties to the fullest extent permitted under the law;

F.      Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

G.      Such other and further relief as this Court deems just and proper.

Date: August 7, 2013                          Respectfully submitted,

                                              /s/Paul J. Lukas
                                              **Paul J. Lukas, MN Bar No. 22084X***
                                              **Timothy C. Selander, MN Bar No. 0387016***
                                              **Reena I. Desai, MN Bar No. 0388311***
                                              NICHOLS KASTER, PLLP
                                              4600 IDS Center, 80 South 8th Street
                                              Minneapolis, MN 55402
                                              Telephone: (612) 256-3200
                                              Facsimile: (612) 215-6870
                                              lukas@nka.com
                                              selander@nka.com
                                              rdesai@nka.com

                                              *admitted pro hac vice*

                                              **David P. Meyer (0065205)**
                                              **Matthew R. Wilson (0072925)**
                                              Meyer Wilson Co., LPA
                                              1320 Dublin Road, Suite 100
                                              Columbus, Ohio 43215
                                              Telephone: (614) 224-6000
                                              Facsimile: (614) 224-6066
                                              dmeyer@meyerwilson.com
                                              mwilson@meyerwilson.com

                                              *Trial Attorney for Plaintiffs*

                                              **Jami S. Oliver (0061738)**
                                              OLIVER LAW OFFICES, INC.
                                              132 Northwoods Blvd., Ste. B
                                              Columbus, OH 43235
                                              Telephone:  (614) 220-9100
                                              Facsimile:  (866) 318-4580
                                              joliver@jamioliver.com

                                              **Carolyn H. Cottrell**
                                              SCHNEIDER WALLACE COTTRELL
                                              KONECKY LLP
                                              180 Montgomery Street, Suite 2000
                                              San Francisco, California 94104
                                              Telephone: (415) 421-7100

Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com

**Shanon J. Carson**
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew C. Smith:           acsmith@vorys.com, tlavery@vorys.com

Jami S. Oliver:           joliver@jamioliver.com

David P. Meyer:           dmeyer@meyerwilson.com, docket@meyerwilson.com

Matthew R. Wilson:        mwilson@meyerwilson.com, docket@dmlaws.com

Sarah E. Bouchard:        sbouchard@morganlewis.com

Paul J. Lukas:           lukas@nka.com, assistant@nka.com

John R. Richards:         jrrichards@morganlewis.com, cpenaloza@morganlewis.com

                          echapman@morganlewis.com

Reena I. Desai:           rdesai@nka.com, assistant@nka.com

Timothy C. Selander:       selander@nka.com, assistant@nka.com

Steven R. Wall:           swall@morganlewis.com

Michael J. Boyle, Jr.       mboyle@meyerwilson.com

 

/s/Paul J. Lukas_____
Paul J. Lukas, MN Bar No. 22084X*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
lukas@nka.com

*admitted pro hac vice*

*Counsel for Plaintiffs*