IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LEE W. STRUCK, CHRISTOPHER B. KUSSEROW, ALINA MARRERO, SARAH ELIZABETH GOODMAN, JOHN SKIDMORE, APRIL HOWELL, DARRYL SUTTON, LINDA ALTIERI, JAMI MCDERMOTT, THOMAS CAPALDI, VINCENT AIOSSA, BRIAN MAHRER, and TERRY WIYRICK, on behalf of themselves and others similarly situated, | : : : : : : : : : : : : : | **Case No. 2:11-CV-00982**<br><br>**JUDGE ALGENON L. MARBLEY**<br><br>**Magistrate Judge Norah M. King** |
| Plaintiffs, | : | |
| v. | : | |
| PNC BANK, N. A., | : : | |
| Defendant. | : : | |

**<u>PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR
PRELIMINARY APPROVAL OF RULE 23 CLASS SETTLEMENT
AND FOR APPROVAL OF FLSA SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................................1

**SUMMARY OF FACTS AND PROCEDURAL HISTORY** ...........................................3

**SUMMARY OF THE SETTLEMENT TERMS** ....................................................5

    **A. The Settlement Fund**...........................................................................5

    **B. Eligible Employees (the Settlement Classes)**...........................................5

    **C. Releases** ...........................................................................................6

    **D. Allocation Formula** ..............................................................................6

    **E. Attorneys' Fees and Litigation Costs** ......................................................7

    **F. Class Representative Enhancement Awards**............................................8

    **G. Settlement Administration** ...................................................................8

**ARGUMENT** ......................................................................................................9

    **I. THE CLASS ACTION SETTLEMENT PROCEDURE**.........................................9

In class action settlements like this one, Rule 23 establishes a defined procedure and specific criteria for settlement approval. Fed. R. Civ. P. 23(e); <u>Manual for Complex Litigation</u>, § 21.632 (4th ed.); Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u> ("<u>Newberg</u>"), §§ 11.22, <u>et seq.</u> (4th ed. 2002). Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlement, certifying the settlement class, and approving the proposed notice. Upon the Court's order granting this motion, the parties will adhere to a proposed schedule to complete the remaining steps of the settlement process.

    **II. PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE**.................9

The Sixth Circuit has recognized that the law encourages class action settlements. Inherent costs, delays, and risks of continued litigation in class actions might overwhelm any potential benefit the class could hope to obtain. <u>Franks v. Kroger Co.</u>, 649 F.2d 1216, 1224 (6th Cir. 1981) <u>on reh'g</u>, 670 F.2d 71 (6th Cir. 1982) (citations omitted); <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992). Both parties' counsel supports the Settlement as fair and reasonable, because it represents an excellent result in light of the facts and circumstances of this litigation.

**A. The Settlement Provides Substantial Relief to Plaintiffs and Class Members** ...............................................................................................12

The total settlement amount is substantial. From the amount, all FLSA Plaintiffs and Rule 23 Class Members who choose to participate will receive a *pro rata* payment based on individualized damage calculations which, after deductions for attorneys' fees and costs and settlement administration expenses, assume four hours of overtime worked each week.

**B. The Settlement Treats all Plaintiffs and Class Members Fairly** ......................13

Allocations for each subclass were derived from damages which were calculated with the same formula, using each eligible employee's earnings, weeks worked, and an equal number of hours worked as the variable factors.

**C. Attorneys' Fees and Costs** ...................................................................................13

Plaintiffs' Counsel will request that the Court award a sum of not more than one-third of the Settlement Fund in attorneys' fees and an additional amount in costs. Defendant agrees not to oppose Plaintiffs' Counsel's application for the payment of attorneys' fees and costs.

**III. CERTIFICATION OF THE RULE 23 SETTLEMENT CLASSES IS APPROPRIATE**...........................................................................................14

In connection with preliminary approval, Plaintiffs request that the Court certify for settlement purposes settlement classes for all persons who worked as a MLO for Defendant in the states of California, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, Pennsylvania and Washington.

**A. Class Certification Under Rule 23** .....................................................................15

Class certification "enables courts to treat common claims together". In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig, 55 F.3d 768, 783-84 (3d Cir. 1995). Plaintiffs seek class certification under Rule 23(b)(3).

**1. The proposed settlement classes satisfy the numerosity requirement** ........16

Plaintiffs satisfy the numerosity requirement because there are more than 800 putative class members, and the proposed subclasses have at least 19 members. Swigart v. Fifth Third Bank, 288 F.R.D. 177 (S.D. Ohio 2012).

**2. The proposed settlement classes satisfy the commonality requirement** .....16

Plaintiffs satisfy the commonality requirement, as the resolution is substantially related to the legal issues in this case. Swigart, 288 F.R.D. at 183. In this case, the commonality requirement is satisfied because Class Members were subjected to the same overtime-exempt classification and generally performed their job duties pursuant to the same policies, procedures and expectations.

### 3. The proposed settlement classes satisfy the typicality requirement ...........17

Plaintiffs satisfy the typicality requirement because the claims are representative of the class. Swigart, 288 F.R.D. at 185; Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998). Typicality exists in this case because Plaintiffs and Class Members share the same interest of recovering their unpaid overtime wages based on the theory that the misclassification violated the FLSA and state overtime laws.

### 4. The proposed class representatives and their counsel are adequate representatives .................................................................................................17

Plaintiffs satisfy the adequacy requirement. Plaintiffs' counsel is qualified, experienced, and generally able to conduct this litigation on behalf of the proposed classes. The proposed class representatives share a common interest in recovering unpaid overtime wages. Swigart, 288 F.R.D. at 185-86.

### 5. Rule 23(b)(3) is Satisfied ................................................................................18

Rule 23(b)(3) contains two inquiries: predominance and superiority. In this case, the proposed subclasses satisfy the Rule 23(b)(3) predominance requirement because all Class Members share a common set of core, predominant facts and legal issues. Powers v. Hamilton County Public Defender Comm., 501 F.3d 592, 619 (6th Cir. 2007); Swigart, 288 F.R.D. 177; Lyons, 2012 WL 5499878. The superiority requirement is satisfied because there is no evidence that the putative class members have any interest in maintaining this litigation in separate actions. The manageability factor is automatically satisfied when a case is being certified for settlement purposes. Amchem Prods., 521 U.S. 591.

### B. The Court Should Appoint Plaintiffs' Counsel as Class Counsel ....................20

A court certifying a class generally must appoint class counsel. Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs request that Nichols Kaster, PLLP, Meyer Wilson Co., LPA, Oliver Law Offices, Schneider Wallace Cottrell Konecky LLP, and Berger & Montague, P.C. be appointed Class Counsel, with Nichols Kaster, PLLP acting as lead class counsel. These firms have diligently litigated this action, negotiated a fair settlement with the assistance of a third-party mediator, and each has substantial credentials in class and collective action litigation.

### C. The Court Should Approve the Parties' Proposed Notice ...............................20

The content of the proposed Notice of Class Action Settlement fully complies with due process and Rule 23(c)(2)(B). It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.

**D. The Court Should Approve the FLSA Settlement** .............................................21

Because Plaintiffs' FLSA claims are distinct from the Rule 23 Class Members' state law claims, Plaintiffs seek approval of the settlement of the FLSA claims separately. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (l1th Cir. 1982). In this case, the settlement was the result of an arm's-length negotiation. The parties contested the scope of coverage under the FLSA and the amount of unpaid overtime worked.

**CONCLUSION** .....................................................................................................22

## TABLE OF AUTHORITIES

**CASES**

Amchem Prods. Inc. v. Windsor, 521 U.S. 591 (1997) ........................................................18-19

Bert v. AK Steel Corp., 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ................................12

Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir. 1992) .........................................10

Craig v. Rite Aid Corp., 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ......................................12

Cross v. Nat'l Trust Life Ins. Co., 553 F.2d 1026 (6th Cir.1977) ........................................18

Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d (4th Cir. 1967).....4

DeBoer v. Mellon Mortgage Co., 64 F.3d 1171 (8th Cir. 1995) ...........................................16

Deposit Guarantee Nat'l Bank v Roper, 455 U.S. 326 (1980) ..............................................15

Franks v. Kroger Co., 649 F.2d 1216 (6th Cir. 1981) on reh'g, 670 F.2d 71
(6th Cir. 1982)....................................................................................................................10

Gen. Tel. Co. v. Falcon, 457 U.S. 147 (1982) .....................................................................17

Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990)  ...................................................4

In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768 (3d Cir. 1995) .........15

Levell v. Monsanto Research Corp., 191 F.R.D. 543 (S.D. Ohio 2000)  ............................11

Little Caesar Entpr., Inc. v. Smith, 172 F.R.D. 236 (E.D. Mich. 1997) ...............................17

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (l1th Cir. 1982) .........................21

Lyons v. Citizens Fin. Group, Inc., 2012 WL 5499878 (D. Mass. Nov. 9, 2012)...............17, 19

Mangone v. First USA Bank, 206 F.R.D. 222 (S.D. Ill. 2001).............................................12

McKenna v. Champion Int'l Corp., 747 F.2d 1211 (8th Cir. 1984) .....................................21

Meyer v. Stevenson, Bishop, McCredie, Inc., 1976 WL 788 (S.D.N.Y. 1976)  .................4

Parkhill v. Minn. Mut. Life Ins. Co., 188 F.R.D. 332 (D. Minn. 1999) ...............................16

Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. (E.D. Pa. 1968) .................4

Powers v. Hamilton County Public Defender Comm., 501 F.3d 592 (6th Cir. 2007)...........18

Robinson v. Ford Motor Co., 2005 WL 5253339 (S.D. Ohio June 15, 2005)......................11

Senter v. Gen. Motors Corp., 532 F.2d 511 (6th Cir. 1976)..................................................17-18

Sprague v. Gen. Motors Corp., 133 F.3d 388 (6th Cir. 1998) ...............................................17

Swigart v. Fifth Third Bank, 288 F.R.D. 177 (S.D. Ohio 2012) .....................................16-19

**STATUTES, REGULATIONS, AND RULES**

29 U.S.C. § 201.............................................................................................................................1

29 U.S.C. § 259.............................................................................................................................3

29 U.S.C. § 216(b) .......................................................................................................................3

Fed. R. Civ. P. 23(a)(4).............................................................................................................17

Fed. R. Civ. P. 23(b)(3).......................................................................................................18, 19

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................20-21

Fed. R. Civ. P. 23(g)(1)(A).......................................................................................................20

Fed. R. Civ. P. 23(g)(1)(B).......................................................................................................20

Fed. R. Civ. P. 23(h) ...................................................................................................................7

Fed. R. Civ. P. 54(d)(2)...............................................................................................................7

O.R.C. § 4111.01 ..........................................................................................................................1

O.R.C. § 4111.03 ..........................................................................................................................1

O.R.C. § 4111.10 ..........................................................................................................................1

O.R.C. § 4113.15 ..........................................................................................................................1

**OTHER**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions,
§§ 11.22, et seq. (4th ed. 2002) ............................................................................................ 9-10

Manual for Complex Litigation, § 21.632 (4th ed.) ..............................................................9

## INTRODUCTION

This is a collective and class action lawsuit for unpaid overtime wages brought by Plaintiffs Lee W. Struck, Christopher B. Kusserow, Alina Marrero, Sarah Elizabeth Goodman, John Skidmore, April Howell, Darryl Sutton, Linda Altieri, Jami McDermott, Thomas Capaldi, Vincent Aiossa, Brian Mahrer, and Terry Wiyrick ("Named Plaintiffs"), on behalf of themselves and all other Mortgage Loan Originators ("MLOs") employed by Defendant PNC Bank, N.A. (hereinafter "Defendant").  In the original Complaint, Plaintiffs Struck and Kusserow alleged that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OWA"), O.R.C. §§ 4111.01, 4111.03, 4111.10, and the Ohio Prompt Pay Act ("OPPA"), O.R.C. §§ 4113.15) by misclassifying MLOs as exempt and thus failing to pay overtime wages during weeks in which they worked more than forty hours. (ECF No. 2.)  Plaintiffs Struck and Kusserow also alleged that Defendant made improper deductions from their pay, and failed to pay them overtime in a timely manner.  (Id.)

On December 16, 2011, Plaintiff Alina Marrero filed a lawsuit against Defendant in the United States District Court for the Northern District of Illinois, captioned Marrero, et al. v. PNC Bank, N.A., Case No. 1:11-CV-08949 (the "Marrero Action").  Plaintiff Marrero alleged a collective action claim under the Fair Labor Standards Act and a class action claim under Illinois law for an alleged failure to pay overtime on behalf of her and all other employees alleged to be similarly situated.  On August 12, 2013, Plaintiff Marrero voluntarily dismissed the Marrero Action, without prejudice and without costs.

On February 20, 2013, Plaintiff Sarah Elizabeth Goodman filed a lawsuit against Defendant in the United States District Court for the Southern District of Indiana, captioned Goodman, et al. v. PNC Bank, N.A., Case No. 1:13-CV-00290 (the "Goodman Action").

Plaintiff Goodman alleged a class action claim under Indiana law for an alleged failure to pay overtime on behalf of her and all other employees alleged to be similarly situated. On August 12, 2013, Plaintiff Goodman voluntarily dismissed the <u>Goodman</u> Action, without prejudice and without costs.

On August 7, 2013, Plaintiffs filed an Amended Complaint in the <u>Struck</u> Action, adding Alina Marrero, Sarah Elizabeth Goodman, John Skidmore, April Howell, Linda Altieri, Darryl Sutton, Jami McDermott, Thomas Capaldi, Vincent Aiossa, Brian Mahrer, and Terry Wiyrick as named plaintiffs and adding class action claims under California, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Missouri, New Jersey, New York, Pennsylvania, and Washington wage and hour laws. (ECF No. 148.)

As explained more fully below, the parties have negotiated a settlement agreement (the "Settlement") that will resolve the claims of the Named Plaintiffs, the Opt-In Plaintiffs, and the putative Rule 23 Class Members. The total amount that Defendant will pay pursuant to the Settlement is $7,000,000.00 and the details of the settlement agreement are set forth in the Stipulation and Settlement Agreement filed herewith as Exhibit A. The parties reached the Settlement after participating in a day-long mediation session in New York, New York on June 18, 2013, before Mediator Michael Dickstein. The parties believe the Settlement is fair, reasonable, and adequate and that it satisfies all criteria for settlement approval under Sixth Circuit law.

With this unopposed motion, Plaintiffs ask the Court to: (1) certify the proposed settlement classes pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process; (2) for settlement purposes, appoint Nichols Kaster, PLLP, Meyer Wilson Co., LPA, Oliver Law Offices, Schneider Wallace Cottrell Konecky LLP, and Berger &

Montague, P.C. as Class Counsel and the Named Plaintiffs as Class Representatives; (3) approve the parties' proposed notice of settlement (attached to Exhibit A as Exhibit 1) and proposed notice procedure; (4) set a date for Plaintiffs to file a motion for final settlement approval and petition for an award of attorneys' fees and costs; (5) schedule the Fairness Hearing; and (6) approve the FLSA settlement.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Plaintiffs Struck and Kusserow both worked for Defendant as MLOs in Ohio.  (ECF No. 2.)  On November 3, 2011, they filed this lawsuit against Defendant on behalf of themselves and all other similarly situated MLOs to recover overtime pay that they alleged Defendant withheld in violation of the FLSA and Ohio Wage Act.  (Id.)  Defendant filed its Answer denying Plaintiffs' allegations on January 13, 2012.  (ECF No. 25.)  In its Answer, Defendant averred that it properly classified Plaintiffs and all MLOs as exempt employees under a number of different exemptions to the overtime pay requirement, including the administrative, outside sales, retail sales, executive, and professional exemptions.  (Id.)  Pursuant to 29 U.S.C. § 259, Defendant also pled an affirmative defense seeking blanket immunity from liability on the grounds that its "alleged failure to pay Plaintiffs or any putative class or collective member overtime wages, if at all, was in good faith inconformity [sic] with and in reliance on an administrative regulation, order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the United States Department of Labor and/or the Ohio Department of Commerce, Bureau of Wage and Hour."  (Id.)

On March 19, 2012, Plaintiffs filed a motion for Conditional Certification and Judicial Notice, requesting that the Court conditionally certify the case as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and authorize Plaintiffs to send notice to all MLOs employed by

Defendant within three years of the date the motion was filed. (ECF No. 52.) Plaintiffs' conditional certification motion was supported by 15 declarations from named and opt-in Plaintiffs who worked as MLOs for Defendant. (Id.) The Court granted Plaintiffs' motion on February 13, 2013. (ECF No. 80.) Following the Court's Order, the parties submitted briefing to the Court on the scope of its Order, and regarding whether tolling of the statute of limitations was appropriate. (See ECF Nos. 83-84.) On March 19, 2013, the Court entered an Order granting, in part, Plaintiffs' request for tolling, allowing tolling back to March 19, 2012, the date that Plaintiffs filed their motion for conditional certification and notice. (ECF No. 89.)

Consistent with the Court's Order granting conditional certification, Defendant produced a list of all MLOs it employed between March 19, 2009 and April 4, 2011, and Plaintiffs' counsel mailed and emailed the approved notice to them on March 28, 2013. (Declaration of Paul J. Lukas ("Lukas Decl.") ¶ 3.) As of July 1, 2013, 935 individuals returned signed consent forms, which Plaintiffs' Counsel filed with the Court. (Id. ¶ 4.)[1] Shortly after Plaintiffs mailed the notice, the parties agreed to mediate this matter.

Since filing the Complaint in November 2011, Plaintiffs' Counsel has extensively investigated the facts, claims, and defenses at issue in the case through interviews with the Named and Opt-in Plaintiffs, review of documents produced by Plaintiffs, and, in preparation for mediation, analysis of thousands of lines of electronic data relevant to the potential damages. (Id.)

---

[1] Of the 935 opt-in Plaintiffs, only 915 are eligible to participate in this settlement: seven withdrew their consent forms during the litigation (ECF Nos. 49, 64, 67, 113, 128, 144) and, as explained in the parties' Stipulation and Settlement Agreement, the parties determined that thirteen individuals did not work in the MLO position or did not join the case within the three-year statute of limitations (Ex. A, p. 3 § II). In addition, the parties determined that the consent form for one opt-in Plaintiff, Kevin Conner, was not actually filed with the Court due to an administrative error. Given the administrative error, the parties agreed to include him in the settlement. Mr. Conner's consent form is attached hereto as Exhibit C.

<u>**SUMMARY OF THE SETTLEMENT TERMS**</u>

The details of the Settlement are contained in the Settlement Agreement, attached hereto as Exhibit A.

**A. The Settlement Fund**

The Parties agree to settle all claims in the case for $7,000,000.00. Following deductions for attorneys' fees, litigation expenses and costs, $25,000 in administration costs, and Class Representative Awards, approximately 65% of the total settlement will be divided among the 915 Plaintiffs and 833 Rule 23 Class Members. The settlement represents a significant recovery for the Plaintiffs and Rule 23 Class Members. As an initial matter, it is non-reversionary. In other words, settlement funds allocated to unresponsive Rule 23 Class Members will not revert to Defendant. Rather, any such unclaimed funds will be reallocated to participating Plaintiffs and Rule 23 Class Members. Further, and as explained more fully below, <u>after</u> attorneys' fees and costs have been deducted, the agreement provides for approximately four hours of overtime for each eligible week. Relatedly, settlement amounts are based on each individual's dates of employment and earnings in the MLO position during the statutory period. After deductions for attorneys' fees and costs, the average Plaintiff recovery is approximately $3,350; the average Rule 23 Class Member recovery is approximately $1,800.

**B. Eligible Employees (the Settlement Classes)**

There are two groups of MLOs who are eligible to participate in the Settlement: (1) All FLSA Opt-In Plaintiffs who filed consent to join forms with the Court between November 3, 2011 and July 1, 2013, who were employed by Defendant as a MLO between the earlier of March 19, 2009 or the date three years prior to the date they filed a consent to join form with the Court, and April 4, 2011, and who have not otherwise withdrawn their consent forms or been

dismissed by the Court; and (2) All putative class members covered by the California, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Missouri, New Jersey, New York, Ohio, Pennsylvania, and Washington class action claims in the Amended Complaint.  The statute of limitations for putative class members in each respective class is as follows: (i) New York: March 19, 2006 to April 4, 2011; (ii) Kentucky: March 19, 2007 to April 4, 2011; (iii) California: March 19, 2008 to April 4, 2011; (iv) Illinois: December 16, 2008 to April 4, 2011; (v) Maryland, Pennsylvania, and Washington: March 19, 2009 to April 4, 2011; (vi) Ohio: November 3, 2009 to April 4, 2011; and (vii) Indiana, Massachusetts, Missouri, and New Jersey: March 19, 2010 to April 4, 2011.

### C.  Releases

Each eligible employee will receive a Notice of Settlement which will include a statement indicating that by affirmatively opting into the settlement, he or she releases and discharges Defendant from any and all FLSA and state law wage and hour claims, causes of action, or liabilities based on or arising out of the allegation that Defendant did not properly compensate its MLOs for all hours worked through April 4, 2011.  The proposed notice is attached to the Settlement Agreement (Ex. A) as Exhibit 1.

### D.  Allocation Formula

In advance of mediation, Defendant produced: (i) for each Opt-in Plaintiff, the number of weeks worked between March 19, 2009 and April 4, 2011 and annual compensation amounts for the same time period; and (ii) the total number of weeks worked by class members in the states of California, Illinois, Indiana, Maryland, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, and Washington for the same time period.  This data, combined with estimates of

hours worked by the MLOs who had joined this litigation, allowed Plaintiffs' counsel to create a damages model outlining Defendant's potential exposure.

Following mediation, Defendant produced pay period by pay period payroll data for the Plaintiffs and Rule 23 class members for the relevant time periods.  From this data, Plaintiffs' counsel calculated each individual's potential damages, assuming four hours of overtime worked per week, and assigned *pro rata* shares of the Settlement to each of the Plaintiffs and Rule 23 Class Members.  The *pro rata* allocations to the Plaintiffs and Rule 23 Class Members are set forth in Exhibit B.[2]

The Settlement sets forth that fifty percent (50%) of all payments, with the exception of Class Representative Enhancement Awards, constitute wages, will be subject to W-2 reporting, and normal payroll taxes and withholdings will be deducted pursuant to state and federal law. Defendant will be responsible for the employer portion of all such payroll taxes and withholdings.  The parties further agree that the remaining fifty percent (50%) constitute payment for liquidated damages, prejudgment interest, penalties and/or consideration for each class member's release and will be reported on IRS Form 1099.[3]

### E.  Attorneys' Fees and Litigation Costs

Consistent with the fee agreement entered into between Plaintiffs and Plaintiffs' Counsel, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in the amount of one-third (33 1/3%) of the total settlement fund and reimbursement of their actual out-of-pocket litigation costs from the settlement fund.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2),

---

[2] The names of the Plaintiffs and Rule 23 Class Members were redacted to protect their privacy.

[3] Any Class Representative Enhancement Awards approved by the Court will be subject to W-2 reporting, and normal payroll taxes and withholdings will be deducted pursuant to state and federal law.

Plaintiffs' Counsel will file a motion for approval of their attorneys' fees and costs concurrently with the motion for final settlement approval.

### F.  Class Representative Enhancement Awards

As part of the Settlement, the parties agreed to enhancement awards of $2,500 or $5,000 for each Class Representative, depending on each individual's contribution.  Otherwise known as a "service payment" or "incentive award," these awards are in addition to their *pro rata* settlement share as set forth above.  In light of their efforts resulting in a settlement on behalf of the Plaintiffs and Rule 23 Class Members, and the significant risk to their reputation and future employment, these modest awards are reasonable.

### G.  Settlement Administration

Defendant elected to retain Rust Consulting, Inc., a third-party settlement administrator ("Administrator") to administer the settlement.  Under the terms of the Settlement Agreement, $25,000 of the settlement fund will be set aside to cover the costs and expenses incurred by the Administrator.  Defendant will be responsible for any administration costs and expenses exceeding that amount.  Within thirteen business days of the Court's Order granting this motion, the Administrator will be responsible for formatting, printing, and mailing the Notice Packet to each Plaintiff and Rule 23 Class Member.  During the notice period, the Administrator will be responsible for processing returned Claims Forms and Opt-Out Forms (if any).  In addition, during the notice period, the Administrator will forward any questions or inquiries from Plaintiffs or Class Members regarding the settlement to Plaintiffs' Counsel, who will be responsible for answering or otherwise responding.  Following the Court's issuance of an Order granting final approval of the settlement and dismissing the case, the Administrator will be responsible for: (1) issuing Settlement Payments to participating Plaintiffs and Class Members;

(2) calculating and remitting all required payroll taxes to the IRS and state government entities; (3) calculating, issuing and mailing IRS Form W-2s and IRS Form 1099s to the participating Plaintiffs and Class Members; and (4) after settlement checks are mailed, providing Plaintiffs' Counsel with the names of any individuals who have not negotiated their settlement checks prior to the void date.  Plaintiffs' Counsel will work with the Administrator to take all necessary steps to ensure that the Notice of Settlement and settlement checks are sent to the correct addresses. (Id.)

## ARGUMENT

## I.      THE CLASS ACTION SETTLEMENT PROCEDURE

Rule 23 of the Federal Rules of Civil Procedure establishes a defined procedure and specific criteria for settlement approval in class action settlements like this one.  Rule 23(e) describes three steps in the settlement approval process:

(1)     Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

See Fed. R. Civ. P. 23(e); see also Manual for Complex Litigation, § 21.632 (4th ed.).  This procedure, used by courts in this Circuit and endorsed by the leading class action treatises, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  See Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), §§ 11.22, et seq. (4th ed. 2002).  With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the

proposed settlement, certifying the settlement class, and approving the proposed notice.

Upon the Court's order granting this motion, the parties will adhere to the following schedule to complete the remaining steps of the settlement process:

1) <u>Within 3 business days of the Court's Preliminary Approval Order</u>: Plaintiffs' Counsel will provide the Administrator with an Excel chart listing the name and last known address for each Plaintiff; Defendant will provide the same information for all Class Members.

2) <u>Within 10 business days of receiving the information from the parties</u>: the Administrator will mail, via First Class United States mail the Court-approved notice packet to each Plaintiff and Class Member.  The notice period will close 45 days from the date of the mailing.  The Administrator will also mail a reminder postcard to any individual who has not responded to the Notice within 15 days of the close of the notice period.

3) <u>At least 14 days prior to the Fairness Hearing</u>: Plaintiffs' Counsel will file an Unopposed Motion for Final Approval.  The date of the Fairness Hearing will be set by the Court.

4) <u>Within 35 days of (1) entry of the Court's Order granting final settlement approval; (2) issuance of an order directing the dismissal of the case and the entry of judgment; and (3) the expiration of the appeal rights of any party (the "effective date")</u>: the Administrator shall mail to each participating claimant at his or her last known address, his or her individual settlement payment.

## II.    PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE

The Sixth Circuit has recognized "that the law generally favors and encourages the settlement of class actions."  <u>Franks v. Kroger Co.</u>, 649 F.2d 1216, 1224 (6th Cir. 1981) <u>on reh'g</u>, 670 F.2d 71 (6th Cir. 1982) (citations omitted).  Class actions and other complex matters are unique in that the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  <u>See Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); <u>see also</u> <u>Newberg</u> § 11:41 (gathering cases).  The traditional means for handling claims like those at issue here—

individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the individual claims, would be impracticable.  The Settlement, therefore, is the best vehicle for these employees to receive the relief to which they are entitled in a prompt and efficient manner.

Consistent with Rule 23(e), district courts in the Sixth Circuit review class action settlement proposals using a three-step process: (1) preliminary settlement approval; (2) notice to the class of the proposed settlement; and (3) a fairness hearing after notice, "after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest."  Levell v. Monsanto Research Corp., 191 F.R.D. 543, 547 (S.D. Ohio 2000) (citations omitted).  The preliminary approval of a proposed settlement is based on the Court's "familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." Robinson v. Ford Motor Co., 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005).  The Court "should also determine that the settlement is neither illegal nor collusive."  Id.  In the event the Court finds that the settlement falls within the range of possible approval, notice is issued and a fairness hearing is scheduled.

Here, the Court should preliminarily approve the proposed settlement because it represents an excellent result in light of the facts and circumstances of this litigation.  First, the settlement enables Plaintiffs and the Class Members to avoid significant litigation risks regarding at least three important issues:  (1) whether the subject MLOs are overtime-exempt; (2) the extent to which these MLOs actually worked overtime hours; and (3) the chance that the Court would later rule that the MLOs are unable to proceed on a class or collective basis.  At this early stage of the litigation, the ultimate determination of these issues remains uncertain.  Second,

while every case is different, the average payout of approximately $2,610 per class member[4] compares favorably to other recent settlements in which employees allege that they were misclassified as overtime-exempt. See, e.g., Craig v. Rite Aid Corp., 2013 WL 84928, at *10 (M.D. Pa. Jan. 7, 2013) (granting final approval to settlement in which allegedly misclassified Assistant Store Managers received average payouts of $1,845). Finally, Plaintiffs' counsel, who have resolved many overtime rights cases on both a class-wide and individual basis, as well as many other class action cases, are convinced that this settlement is fair and reasonable both standing on its own and when viewed against other overtime settlements. (See Declarations of Paul J. Lukas, Matthew R. Wilson, Jami Oliver, Carolyn Cottrell, and Shanon Carson.) The settlement negotiations were conducted fairly and at arm's-length with the assistance of Michael E. Dickstein, Esq. of Dickstein Dispute Resolution/MEDiate, an experienced mediator, and only occurred after the exchange and rigorous analysis of ample data. Mangone v. First USA Bank, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements); Bert v. AK Steel Corp., 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ("[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Both parties' counsel supports the Settlement as fair and reasonable, and all certify that it was reached at arm's-length.

### A. The Settlement Provides Substantial Relief to Plaintiffs and Class Members

The total settlement amount ($7,000,000.00) is on its face substantial. From this amount, all FLSA Plaintiffs and Rule 23 Class Members who choose to participate will receive a *pro rata* payment based on individualized damage calculations which, after deductions for attorneys' fees

---

[4] This is the combined average recovery for Plaintiffs and Rule 23 class members.

and costs and settlement administration expenses, assume four hours of overtime worked each week.

The parties agree that the Settlement represents a good value given the risks of continued litigation, even though Plaintiffs' recovery could be greater if Plaintiffs succeeded at trial and survived an appeal.  If the litigation were to continue, Plaintiffs would face a number of high stakes risks before trial that could have limited, or even eliminated, their claims, including possible decertification of the FLSA collective action, denial of Rule 23 class certification, and dispositive motions on liability, liquidated damages, and willfulness.  Despite these real and significant risks, participating Plaintiffs and Rule 23 Class Members will receive four hours of overtime pay for each eligible week.  Moreover, because the settlement is non-reversionary, those Plaintiffs and Rule 23 Class Members who choose to participate will likely recover even more after the notice period is complete because funds initially allocated to unresponsive Rule 23 Class Members will be reallocated.  Weighing the risks against the benefits of a settlement, the settlement amount is reasonable.

### B.  The Settlement Treats all Plaintiffs and Class Members Fairly

Allocations for each subclass were derived from damages which were calculated with the same formula, using each eligible employee's earnings, weeks worked, and an equal number of hours worked as the variable factors.

### C.  Attorneys' Fees and Costs

Consistent with Plaintiffs' Counsel's fee agreement with Plaintiffs, Plaintiffs' Counsel will request that the Court award a sum of not more than one-third (33 1/3%) of the Settlement Fund in attorneys' fees and an additional amount in costs.  Defendant agrees not to oppose

Plaintiffs' Counsel's application to the Court for the payment of attorneys' fees and costs. Plaintiffs will file their fee application with the motion for final settlement approval.

## III.    CERTIFICATION OF THE RULE 23 SETTLEMENT CLASSES IS APPROPRIATE

In connection with preliminary approval, Plaintiffs request that the Court certify for settlement purposes the following Settlement Classes, as defined in the Agreement under the laws of Ohio, California, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, New Jersey, New York, Pennsylvania, and Washington:

> All persons who worked as a MLO for Defendant in the State of California at any time between March 19, 2008 and April 4, 2011 (the "California Rule 23 Class").

> All persons who worked as a MLO for Defendant in the State of Illinois at any time between December 16, 2008 and April 4, 2011 (the "Illinois Rule 23 Class").

> All persons who worked as a MLO for Defendant in the State of Indiana at any time between March 19, 2010 and April 4, 2011 (the "Indiana Rule 23 Class").

> All persons who worked as a MLO for Defendant in the Commonwealth of Kentucky at any time between March 19, 2007 and April 4, 2011 (the "Kentucky Rule 23 Class").

> All persons who worked as a MLO for Defendant in the State of Maryland at any time between March 19, 2009 and April 4, 2011 (the "Maryland Rule 23 Class").

> All persons who worked as a MLO for Defendant in the Commonwealth of Massachusetts at any time between March 19, 2010 and April 4, 2011 (the "Massachusetts Rule 23 Class").

> All persons who worked as a MLO for Defendant in the State of Missouri at any time between March 19, 2010 and April 4, 2011 (the "Missouri Rule 23 Class").

> All persons who worked as a MLO for Defendant in the State of New Jersey at any time between March 19, 2010 and April 4, 2011 (the "New Jersey Rule 23 Class").

14

> All persons who worked as a MLO for Defendant in the State of New York at any time between March 19, 2006 and April 4, 2011 (the "New York Rule 23 Class").
>
> All persons who worked as a MLO for Defendant in the State of Ohio at any time between November 3, 2009 and April 4, 2011 (the "Ohio Rule 23 Class").
>
> All persons who worked as a MLO for Defendant in the Commonwealth of Pennsylvania at any time between March 19, 2009 and April 4, 2011 (the "Pennsylvania Rule 23 Class").
>
> All persons who worked as a MLO for Defendant in the State of Washington at any time between March 19, 2009 and April 4, 2011 (the "Washington Rule 23 Class").

As already explained, in total these classes include 833 individuals.

### A.  Class Certification Under Rule 23

Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues" and serves various "important objectives," such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims."  In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig, 55 F.3d 768, 783-84 (3d Cir. 1995) (internal quotations omitted).  "'Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'"  Id. at 784 (quoting Deposit Guarantee Nat'l Bank v Roper, 455 U.S. 326, 339 (1980)).

Plaintiffs seek class certification under Rule 23(b)(3), which provides:

> A class action may be maintained if . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

15

Fed. R. Civ. P. 23.

### 1. The proposed settlement classes satisfy the numerosity requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." Swigart v. Fifth Third Bank, 288 F.R.D. 177, 182 (S.D. Ohio 2012). Importantly, "[t]he plaintiff is not required to establish that it is impossible to join all members of the proposed class, but simply that joinder would be difficult and inconvenient. Id. (internal quotations and citations omitted). Here, numerosity is satisfied because the Classes in total include 833 individuals and each of the proposed subclasses has at least 19 members.[5]

### 2. The proposed settlement classes satisfy the commonality requirement

Commonality under Rule 23 "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." Swigart, 288 F.R.D. at 183 (quoting DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995)). But, "individual class members need not be 'identically situated' to meet the commonality requirement." Id. (quoting Parkhill v. Minn. Mut. Life Ins. Co., 188 F.R.D. 332, 338 (D. Minn. 1999)). Here, the commonality requirement is satisfied because, *inter alia*, Class Members were subjected to the same overtime-exempt classification and, during the relevant time period, generally performed their job duties pursuant to the same policies, procedures, and expectations. As such, the success or failure of each Class Member's claim generally turns on the common question of whether the overtime-exempt classification violates the FLSA and the analogous state overtime laws. Several federal courts have held that Rule 23's commonality requirement is fulfilled in cases

---

[5] The Massachusetts settlement class consists of 19 MLOs and is the smallest of all of the state law settlement classes. Other courts have certified classes of approximately the same size. See, e.g., Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968) (holding that 25 putative class members satisfied the numerosity requirement); Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648 (4th Cir. 1967) (class of 18 individuals found sufficiently numerous); Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (certification of class may be proper even with class as small as 14 members); Meyer v. Stevenson, Bishop, McCredie, Inc., 1976 WL 788 (S.D.N.Y. 1976) (certifying class of thirty individuals). In this case, Defendant does not contest certification and certification is appropriate for settlement purposes.

where MLOs and other employees in the banking industry have asserted similar state law overtime misclassification claims.  See, e.g., Swigart, 288 F.R.D. 177 (S.D. Ohio 2012); Lyons v. Citizens Fin. Group, Inc., 2012 WL 5499878 (D. Mass. Nov. 9, 2012).

### 3. The proposed settlement classes satisfy the typicality requirement

Under Rule 23(a)(3), "the claims ... of the representative parties [must] be typical of the claims ... of the class."  Swigart, 288 F.R.D. at 185.  Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together."  Id. (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982)).  "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [the] claims are based on the same legal theory.'"  Id. (quoting Little Caesar Entpr., Inc. v. Smith, 172 F.R.D. 236, 243 (E.D. Mich. 1997)).  The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class."  Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998).  Here, typicality exists because Plaintiffs and every Class Member share the same interest of recovering their unpaid overtime wages based on the same legal theory: that Defendant's alleged misclassification of MLOs violated the FLSA and the various state overtime laws.

### 4. The proposed class representatives and their counsel are adequate representatives

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This results in a two pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  Swigart, 288 F.R.D. at 185-86 (quoting Senter v. Gen. Motors Corp., 532 F.2d 511, 525 (6th Cir.

1976)).  In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." Id. (quoting Cross v. Nat'l Trust Life Ins. Co., 553 F.2d 1026, 1031 (6th Cir.1977)).  Here, both aspects of Rule 23(a)(4)'s adequacy requirement are satisfied.  As discussed in the Declarations of Paul J. Lukas, Matthew R. Wilson, Jami Oliver, Shanon Carson, and Carolyn Cottrell, Plaintiffs' counsel is qualified, experienced, and generally able to conduct this litigation on behalf of the proposed classes.  Moreover, the proposed class representatives do not have interests that are antagonistic to other Class Members.  Rather, all share a common interest in recovering unpaid overtime wages.

### 5.  Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy."  Thus, Rule 23(b)(3) contains two inquiries: predominance and superiority.  Plaintiffs' claims in this matter satisfy both.

The predominance inquiry requires the Court to ask "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997).  Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation."  Powers v. Hamilton County Public Defender Comm., 501 F.3d 592, 619 (6th Cir. 2007).  In this case, the proposed subclasses satisfy the Rule 23(b)(3) predominance requirement because all Class Members share a common set of core, predominant facts and legal issues, including, *inter alia*:

- All Class Members were uniformly classified as overtime-exempt during the relevant time period;

18

- All Class Members were required to follow uniform job expectations, standardized training materials, and operational protocols; and

- Class Members were subjected to standardized payroll and timekeeping practices.

Other federal courts have found the predominance factor to be readily fulfilled in similar misclassification class actions on behalf of MLOs and other financial sector employees.  See, e.g., Swigart, 288 F.R.D. 177; Lyons, 2012 WL 5499878.

The superiority requirement of Rule 23(b)(3) requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four factors for courts to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).  Each factor weighs in favor of certification.

First, there is no evidence that the putative class members have any interest in maintaining this litigation in separate actions.  Indeed, the two separate actions that were filed, Marrero and Goodman, were dismissed and consolidated into this case.  Second, the benefits of concentrating the claims in this court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction, and many of Defendant's witnesses are located in this district.  Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes.  See Amchem Prods., 521 U.S. 591.

Based on the above, the proposed settlement subclasses satisfy the requirements of Rule 23(a) and (b) and should be certified for settlement purposes.

### B.  The Court Should Appoint Plaintiffs' Counsel as Class Counsel

A court certifying a class generally must appoint class counsel.  See Fed. R. Civ. P. 23(g)(1)(A).  The Rule lists several factors for courts' consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  Id.  In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiffs request that Nichols Kaster, PLLP, Meyer Wilson Co., LPA, Oliver Law Offices, Schneider Wallace Cottrell Konecky LLP, and Berger & Montague, P.C. be appointed Class Counsel, with Nichols Kaster, PLLP acting as lead class counsel.  As already explained, these firms have diligently litigated this action and, after substantial investigation and analysis, negotiated a fair settlement with the assistance of a third-party mediator.  Moreover, as explained in the Lukas, Wilson, Oliver, Cottrell, and Carson Declarations, these firms each have substantial credentials in class and collective action litigation.

### C.  The Court Should Approve the Parties' Proposed Notice

The content of the proposed Notice of Class Action Settlement, which is attached to the Settlement Agreement (Exhibit A) as Exhibit 1, fully complies with due process and Rule 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests

exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  The Notice proposed here satisfies each of these requirements.  It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.  Accordingly, the detailed information in the proposed Notice is more than adequate to put Class Members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

### D.  The Court Should Approve the FLSA Settlement

Because Plaintiffs' FLSA claims are distinct from the Rule 23 Class Members' state law claims, Plaintiffs seek approval of the settlement of the FLSA claims separately.  The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.  See McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").  Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (l1th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Id. at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. Id. at 1354.

In this case, the settlement was the result of arm's-length negotiation.  The parties contested the scope of coverage under the FLSA and the amount of unpaid time worked.

Recognizing the uncertain legal and factual issues involved, the parties engaged in an all-day mediation session with an experienced mediator and ultimately reached the settlement pending before the Court.  During the litigation and at the mediation, Plaintiffs and Defendant were represented by counsel and the settlement was the result of good faith, arm's-length negotiations. Accordingly, Plaintiffs request that the Court approve the FLSA Settlement.

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that the Court enter the proposed Order submitted herewith.

Respectfully submitted this 6th day of September, 2013.


s/Paul J. Lukas
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
Reena I. Desai, MN Bar No. 0388311*
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2242
Telephone:  (612) 256-3200
Facsimile: (612) 215-6870
lukas@nka.com
selander@nka.com
rdesai@nka.com

*admitted pro hac vice*

David P. Meyer (0065205)
Matthew R. Wilson (0072925)
**MEYER WILSON CO., LPA**
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile: (614) 224-6066
dmeyer@meyerwilson.com
mwilson@meyerwilson.com

Jami S. Oliver
**OLIVER LAW OFFICES, INC.**
132 Northwoods Blvd., Ste. B
Columbus, Ohio 43235
Telephone:  (614) 220-9100
Facsimile:  (866) 318-4580
joliver@jamioliver.com

Carolyn H. Cottrell
**SCHNEIDER WALLACE COTTRELL
KONECKY LLP**
180 Montgomery Street, Ste. 2000
San Francisco, California 94104
Telephone:  (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com

Shannon J. Carson
**BERGER & MONAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone:  (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net

**Counsel for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew C. Smith:          acsmith@vorys.com, tlavery@vorys.com

Jami S. Oliver:           joliver@jamioliver.com

David P. Meyer:           dmeyer@meyerwilson.com, docket@meyerwilson.com

Matthew R. Wilson:        mwilson@meyerwilson.com, docket@dmlaws.com

Sarah E. Bouchard:        sbouchard@morganlewis.com

Paul J. Lukas:            lukas@nka.com, assistant@nka.com

John R. Richards:         jrrichards@morganlewis.com, cpenaloza@morganlewis.com

                          echapman@morganlewis.com

Reena I. Desai:           rdesai@nka.com, assistant@nka.com

Timothy C. Selander:      selander@nka.com, assistant@nka.com

Steven R. Wall:           swall@morganlewis.com

Michael J. Boyle, Jr.      mboyle@meyerwilson.com

I further certify that I caused the proposed order to be filed with the court via the ECF system  and emailed a version in MS Word format to Judge Algenon L. Marbley (marbley_chambers@ohsd.uscourts.gov).

And I certify that I caused a copy of the proposed order to be e-mailed to the following:

Andrew C. Smith:          acsmith@vorys.com, tlavery@vorys.com

Jami S. Oliver:           joliver@jamioliver.com

David P. Meyer:           dmeyer@meyerwilson.com, docket@meyerwilson.com

Matthew R. Wilson:        mwilson@meyerwilson.com, docket@dmlaws.com

Sarah E. Bouchard:        sbouchard@morganlewis.com

Paul J. Lukas:            lukas@nka.com, assistant@nka.com

John R. Richards:         jrrichards@morganlewis.com, cpenaloza@morganlewis.com

                          echapman@morganlewis.com

Reena I. Desai:           rdesai@nka.com, assistant@nka.com

Timothy C. Selander:      selander@nka.com, assistant@nka.com

Steven R. Wall:           swall@morganlewis.com

Michael J. Boyle, Jr.      mboyle@meyerwilson.com

Dated: September 6, 2013           NICHOLS KASTER, PLLP

                                   /s/ Paul J. Lukas
                                   Paul J. Lukas, MN Bar No. 22084X*
                                   4600 IDS Center, 80 South 8th Street
                                   Minneapolis, MN  55402
                                   T: (612) 256-3200
                                   F: (612) 215-6870
                                   E: lukas@nka.com

                                   *admitted pro hac vice

                                   **Counsel for Plaintiffs**